**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        v.

KAREN LOWRY,
        *Defendant-Appellant.*

No. 06-10469

D.C. No.
CR-05-00399-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
June 15, 2007—San Francisco, California

Filed January 16, 2008

Before: Alfred T. Goodwin, Jay S. Bybee, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Bybee

## COUNSEL

Monica Knox, Assistant Federal Public Defender, Sacramento, California, for the appellant.

Samantha Spangler, Assistant United States Attorney, Sacramento, California, for the appellee.

## OPINION

BYBEE, Circuit Judge:

In this case we are presented with a question of first impression: Who bears the burden of proof when a defendant is charged with occupation of Forest Service land in violation of 36 C.F.R. §§ 261.10(b) and (k)? Must the prosecution prove that the defendant does not have individual aboriginal title, or is the claim an affirmative defense? We hold that the occupant claiming individual aboriginal title bears the burden of demonstrating such title as an affirmative defense. Applying that standard, we conclude that the defendant in this case failed to meet this burden, and we affirm the judgment of the district court upholding the defendant's convictions.

I

Congress has charged the Secretary of Agriculture with "regulat[ing] the[ ] occupancy and use" of the national forests by "rules and regulations." 16 U.S.C. § 551. Any person violating such regulations may be tried before a magistrate judge and, if convicted, punished. *Id.* Under the Secretary's regulations, no one may "possess[ ] . . . occupy[ ], or otherwise us[e] National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation." 36 C.F.R. § 261.10(b). Section 261.10(k) similarly prohibits the "[u]se or occupancy of

National Forest System land or facilities without special-use authorization when such authorization is required."

There are effectively three ways that a claimant may be authorized to occupy national forest lands. First, a claimant may receive special-use authorization. *See* 36 C.F.R. §§ 251.50, 251.52, 251.55. Second, she may claim authorization under the Forest Allotment Act, which permits Indians who are "not entitled to an allotment on any existing Indian reservation, or for whose tribe no reservation has been provided" to apply for an allotment. 25 U.S.C. § 337. The Secretary of the Interior may grant such allotment if the Secretary of Agriculture finds that the land is more valuable for agricultural or grazing purposes than for the timber. *Id.*; *see* 43 C.F.R. §§ 2533.1, 2533.2. Third, she may claim individual aboriginal title to the land under the authority of the Supreme Court's decision in *Cramer v. United States*, 261 U.S. 219 (1923). *See United States v. Dann*, 873 F.2d 1189 (9th Cir. 1989).

The Karuk people have occupied the Oak Bottom area of the Klamath National Forest in northern California from time immemorial. Karen Lowry, a Karuk Indian, has resided on property located in the Oak Bottom area since approximately 1983. Lowry has not received a special-use authorization, nor has the Secretary of Interior granted Lowry an Indian allotment of land on this site. Oak Bottom encompasses a large area, including a Forest Service campground and work center, a 6.5 acre parcel known as Indian Allotment 280, and Lowry's current residence, comprising about five acres. Indian Allotment 280, which is approximately fifty yards from Lowry's residence, was granted to Oak Bottom Jack, one of Lowry's relatives, and has passed to relatives other than Lowry. Lowry's great-great-grandfather, Nupas, resided in the Oak Bottom area at least until 1900. Her great-great-grandmother, Mahkhawa'da, resided in a two-story log cabin located on the property now occupied by Lowry. The dates of Mahkhawa'da's residence are unclear, but it appears that she

was forced off the property by white miners at some point in the early 1900s. Mahkhawa'da later returned to the property after the miners left.

Lowry's paternal grandmother, Bessie Tripp, was born in the area in the 1870s. Bessie was not raised on the land currently occupied by Lowry, but in a "house up at the upper end." Bessie left the area to attend school and subsequently got married, though she returned on the weekends and during some summers. In 1926, Bessie took up permanent residence on Indian Allotment 280. Lowry resided with Bessie on Indian Allotment 280 until Lowry was eleven years old, when she was placed in foster care. Lowry occasionally returned to Oak Bottom to visit Bessie, although Lowry did not take up residence on the property she currently occupies until about April 1983, after Bessie's death on December 6, 1982.

In the late 1980s, the Forest Service accused Lowry of trespassing on Forest Service lands and encouraged her to obtain an Indian allotment for the land she occupied. She applied for an allotment in 1987.[1] On July 13, 1990, a Forest Service Supervisor determined that the land was not available for allotment because of its location within the Wild and Scenic River corridor of the Salmon River. The Supervisor also noted several other reasons that an allotment could not be granted, including Lowry's statutory ineligibility and her failure to substantiate the agricultural uses of the land. When Lowry requested that the Supervisor permit her to reopen the proceedings, the Supervisor refused, citing the lack of any new information that would result in issuance of the allotment. California Indian Legal Services sent the Supervisor a "Notice of Appeal" on Lowry's behalf, which the Supervisor denied

---

[1]In 1988, Lowry received a certificate of eligibility from the Department of the Interior which certifies that she is eligible to obtain an allotment of land in the public domain or in a national forest. However, the letter noted that her "chances of obtaining a Public Domain allotment are severely limited."

because the governing regulations did not permit an administrative appeal in Lowry's case. Lowry sought no further relief.

On August 8, 2003, the government charged Lowry with occupancy of Forest Service land in violation of 36 C.F.R. §§ 261.10(b) and (k).[2] Prior to trial, the government filed a motion in limine to exclude evidence that the government's denial of Lowry's application for an Indian allotment was arbitrary and capricious. The magistrate judge granted this motion and precluded evidence related to Lowry's application. Before the magistrate judge, Lowry claimed a right to aboriginal title under *Cramer*, 261 U.S. 219, because her family had resided in the area since at least the late 1800s.

On August 30, 2005, after a two-day trial, the magistrate judge found Lowry guilty of unlawful occupancy. He rejected Lowry's argument that she was authorized to occupy the land, holding that authorization is an affirmative defense as to which Lowry had not met her burden of proof. The magistrate judge also considered Lowry's challenges to the denial of her allotment application. Ultimately, he determined that the court lacked jurisdiction pursuant to 25 U.S.C. § 345 to consider the denial of the allotment application and further found that Lowry was not deprived of due process because she had voluntarily opted not to pursue an action in the district court following the denial. He then issued a sentence that required Lowry to leave the disputed land by April 30, 2006.

On July 25, 2006, the district court issued a detailed opinion affirming Lowry's conviction, but on different grounds. The district court held that authorization was an element of the offense for which the government bore the burden of

---

[2]Although the government initially filed a 23-count information, it eventually brought only the first two charges, both concerning Lowry's unlawful occupancy. The government also agreed to seek only Lowry's removal from the land and restitution for clean-up costs rather than a fine or a prison sentence.

proof. However, the court then held that any error caused by the magistrate judge's incorrect rule was harmless because the government had met its burden of proof. The district court also affirmed the magistrate judge's exclusion of the evidence of Lowry's Indian allotment application and the determination that the magistrate judge lacked jurisdiction to consider Lowry's challenge to the Forest Service's denial of that application.

II

Lowry appeals her convictions for unauthorized residential occupancy of land in a national forest, *see* 36 C.F.R. § 261.10(b), and for unauthorized use or occupancy of land or facilities in a national forest, *see* 36 C.F.R. § 261.10(k). She raises two issues. First, Lowry contends that the magistrate judge erroneously shifted the burden of proof and that the government failed to prove each element of the crime. Specifically, she alleges that the government has the burden of proving that she did not have authorization based on a claim of individual aboriginal title to occupy the Oak Bottom area. Second, Lowry asserts that the magistrate judge precluded her from presenting a defense by excluding evidence that the denial of her Indian allotment application was arbitrary and capricious, because, had the application been granted, would have provided an alternate means of authorization to occupy the land. We address each of Lowry's arguments in turn.

III

Lowry claims that she has individual aboriginal title to the National Forest Service lands she now occupies. Preliminarily, she disputes the burden of proof applied by the magistrate judge as to the authorization requirements in 36 C.F.R. §§ 261.10(b) and (k). Lowry contends that the government has the burden to prove all elements of the crime as defined in the regulations, and to do so, it must establish a negative— that she *lacked* authorization to occupy the land in question.

Consequently, she asserts that the magistrate judge erred by requiring her to establish that she held individual aboriginal title to occupy the land. With respect to the district court's ruling, Lowry does not challenge the burden of proof applied, but disputes that the government provided sufficient evidence to negate her authorization to occupy the land. The government contends that authorization operates as an affirmative defense, such that an occupant must raise and prove some right to possession.[3]

Our analysis is complicated by the fact that although Lowry challenges the magistrate judge's rule, she agrees with the one subsequently applied by the district court. The magistrate judge—acting as the trial court—applied the allegedly erroneous burden of proof and convicted Lowry. The district court then rejected the magistrate judge's allocation of the burden of proof and adopted the rule endorsed by Lowry, but nonetheless upheld the conviction. Consequently, although Lowry disagrees with the magistrate judge in full, she only disagrees with the district court in part: Lowry does not assert that the district court's *rule* was plainly erroneous, but that the district court's *application* of that rule was plainly erroneous. To assess Lowry's claim, however, we must first consider the allocation of the burden of proof as to the authorization requirement in 36 C.F.R. §§ 261.10(b) and (k). Only then can we turn to whether that burden was met. Because we reject the rule applied by the district court, we do not ultimately reach the merits of Lowry's challenge to the district court ruling.

---

[3]Lowry's challenge to the magistrate judge's interpretation of a statute is a question of law that we typically review de novo. *See United States v. Carranza*, 289 F.3d 634, 642 (9th Cir. 2002). Lowry's appeal from the district court amounts to a claim of insufficient evidence, a ground she did not raise before the district court. Our review "when a defendant does not preserve a claim of sufficiency of the evidence by failing to make a motion for acquittal at the close of the evidence," requires reversal "only upon plain error or to prevent a manifest injustice." *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004).

A

**[1]** Sections 261.10(b) and (k) do not explicitly allocate the burden of proof. The regulations make it a misdemeanor to occupy Forest Service land for residential purposes "without a special-use authorization, or as otherwise authorized by Federal law or regulation." 36 C.F.R. § 261.10(b). The magistrate judge held that Lowry's claim to individual aboriginal title was an affirmative defense and that she "had the burden of going forward with these affirmative defenses, since they were not elements of the case in chief." The district court disagreed, citing its prior decision in *United States v. Lex*, 300 F. Supp. 2d 951, 956 (E.D. Cal. 2003), and held that the phrase "without a special-use authorization or as otherwise authorized by federal law" was an element of the crime charged.

**[2]** We have not explicitly addressed the allocation of the burden of proof of the authorization requirement in 36 C.F.R. §§ 261.10(b) and (k). In fact, it appears that the burden of proof question is one of first impression in the circuit courts. Because the absence of a special-use authorization or Indian allotment is not disputed here,[4] we do not address the burden of proof as to these potential grounds for authorization.[5] Instead, we consider the burden of proof as to the specific basis raised here—that is, Lowry's claim of individual aboriginal title.

---

[4]Although Lowry challenges the government's denial of her Indian allotment application as arbitrary and capricious, an issue we address in section IV, she does not dispute the denial itself.

[5]There is language in our precedent suggesting that the government must prove the absence of a special-use authorization or an Indian Allotment. *See United States v. Adams*, 388 F.3d 708, 712 (9th Cir. 2004) (reciting the lack of special-use authorization as a statutory element to be proven by the government); *United States v. Caudle*, 48 F.3d 433, 434 (9th Cir. 1995) (same). However, neither *Adams* nor *Caudle* specifically considered the allocation of the burden of proof. We need not address this issue here.

We have previously considered whether a claim of individual aboriginal title satisfied the requisite authorization in 36 C.F.R. § 261.10(b) in a case very similar to Lowry's. In *United States v. Kent*, 945 F.2d 1441 (9th Cir. 1991), we addressed whether Kent, a Karuk Indian, had an individual aboriginal right to occupy land within the Klamath National Forest. We did not explicitly address the burden of proof as to authorization, but we did speak in terms that appeared to put the burden on the defendant to establish individual aboriginal title. We phrased the defendant's position as a defense, stating that "[a]t trial, [the defendant] *defended* her occupancy of this parcel of land as protected by individual aboriginal title," *id*. at 1443, and we required the defendant to demonstrate such title, observing that individual aboriginal title may be established "when an Indian can show that she or her lineal ancestors continuously occupied a parcel of land, as individuals, and that the period of continuous occupancy commenced before the land in question was withdrawn from entry for purposes of settlement." *Id*. at 1444 (emphasis omitted) (citing *United States v. Dann*, 873 F.2d 1189, 1198-99 (9th Cir. 1989)). We held that "[the defendant]'s claim fails to meet th[ose] requirements." *Id*. Although we did not expressly so hold, *Kent* strongly implied that the defendant has the burden of proving a claim of individual aboriginal title.

**[3]** Lowry argues that *Kent* does not govern her case and that the phrase in 36 C.F.R. § 261.10(b), "without a special-use authorization, or as otherwise authorized by Federal law or regulation," merely "negates an element of the crime" and may not be shifted to the defendant. *See Walker v. Endell*, 850 F.2d 470, 472 (9th Cir. 1987). We disagree. It is a "settled rule" that "an indictment or other pleading founded on a general provision defining the elements of an offense, or of a right conferred, need not negative the matter of an exception made by a proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." *McKelvey v. United States*, 260 U.S. 353, 357 (1922). We do

not think that the "without" clause in 36 C.F.R. § 261.10(b) negates an element of the crime. The charge from Congress to the Secretary of Agriculture is "to regulate the[ ] occupancy and use [of the national forests] and to preserve the forests thereon from destruction." 16 U.S.C. § 551. This the Secretary has done by prohibiting the "[t]aking possession of, occupying, or otherwise using National Forest System lands for residential purposes," 36 C.F.R. § 261.10(b), and the "[u]se or occupancy of National Forest System land or facilities." 36 C.F.R. § 261.10(k). The government bears the burden of proving possession, use or occupancy of the land. The statute prohibits possession or occupation generally, subject to specific exceptions authorized by law. The "without" clause simply recognizes the existence of such exceptions to the general prohibition against residing in the nation's forests. We hold that the defendant bears the burden of proving these exceptions.

This approach is consistent with our approach in *Kent*, in which we stated that the person claiming individual aboriginal title must demonstrate continuous individual occupation that commenced before the land in question was withdrawn from entry for purposes of settlement. *See Kent*, 945 F.2d at 1444. Placing the burden on the claimant to prove authorization is also consistent with other cases in a variety of areas in which we have addressed statutory exceptions. In *United States v. Freter*, the statute at issue provided for the punishment of " '[a]ny person . . . in charge of a facility from which a hazardous substance is released, *other than a federally permitted release*, . . . who fails to notify immediately the appropriate agency.' " 31 F.3d 783, 787 (9th Cir. 1994) (quoting 42 U.S.C. § 9603(b)(3)) (emphasis and alterations in original). The defendant argued that the government was required to prove, as an element of the offense, that its release was *not* federally permitted. He argued that the "other than" clause was an element of the offense because it was "not set forth in a distinct statutory section, but is stated in a sentence describing the elements of the offense, and is set off only by com-

mas." *Id.* at 788. We rejected this argument, stating that "[t]he doctrine we apply . . . is not limited to statutes in which the relevant language is in a separate section, or in which the relevant language is in a separate sentence from that describing the elements of the crime," and derives from the "well-established rule . . . that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, has the burden of establishing and showing that he comes within the exception." *Id.* (citations and internal quotation marks omitted). *See also Moore v. United Kingdom*, 384 F.3d 1079, 1085-86 (9th Cir. 2004) ("As [the appellant] is relying on an exception within the text of the treaty, the burden is on him to show that the exception applies."); *United States v. Gravenmeir*, 121 F.3d 526, 528 (9th Cir. 1997) (construing 18 U.S.C. § 922(o)(2)(B) as an affirmative defense). Once the claimant proves that she comes within the exception, then the government must prove the inapplicability of the defense beyond a reasonable doubt. *See United States v. Bruce*, 394 F.3d 1215, 1222-23 (9th Cir. 2005) (holding that Indian status is an affirmative defense to a charge under 18 U.S.C. § 1152, and that once the burden of production is satisfied, the government retains the ultimate burden of persuasion).

Aside from its theoretical support, our approach makes practical sense in this case: given the nature of Lowry's claim to individual aboriginal title, it would be "far easier for the defendant to present evidence" of her Indian ancestors and their history of land occupancy to establish that the exception applies than for the government to do so. *Freter*, 31 F.3d at 788-89; *see also Gravenmeir*, 121 F.3d at 528 ("That the government *could* 'prove the negative' in this case, however, does not mean that it would be easier for the government to do so."); *United States v. Hester*, 719 F.2d 1041, 1043 (9th Cir. 1983) ("It is far more manageable for the defendant to shoulder the burden of producing evidence that he is a member of a federally recognized tribe than it is for the Govern-

ment to produce evidence that he is not a member of any one of the hundreds of such tribes.").[6]

Finally, we consider that if we were to place the burden on the government, we would create a presumption that Indians have an individual aboriginal claim until the United States proves otherwise. Such a presumption might prove unworkable in a number of ways—not the least being that it might subject some national forest system lands to multiple claims of ownership and leave the United States unable to manage its lands effectively. Nothing in the statute requires such a result, and we doubt that was the Secretary's design in the regulations.

[4] Having concluded that where authorization is claimed by virtue of individual aboriginal title, it is an affirmative defense to be raised by a defendant, we need not address whether the government provided sufficient evidence to negate Lowry's right to individual aboriginal title. It is Lowry, and not the government, who has the burden to establish individual aboriginal title. As we explain, we conclude that Lowry has not made even a prima facie showing that she satisfies the requirements for such a claim.

B

[5] The Supreme Court first introduced the doctrine of individual aboriginal title in *Cramer v. United States*, 261 U.S. 219 (1923), to permit individual Indian tribe members to establish rights to land separate from their nomadic tribes. The Court described the individual right as similar in purpose to the right of tribal occupancy, but emphasized its *individual*

---

[6]Arguably, the same logic may not hold true for records of special-use authorizations and Indian allotments, which the government may keep as to its National Forest Service land. However, as we previously noted, our holding is limited to the burden of proof for authorization based on individual aboriginal title.

nature as "based on occupancy alone" and "clearly fixed by the inclosure, cultivation and improvements" of the land. *Cramer*, 261 U.S. at 227-29, 235. We further defined the right to individual aboriginal title in *United States v. Dann*, 873 F.2d 1189 (9th Cir. 1989), and *United States v. Kent*, 945 F.2d 1441 (9th Cir. 1991). In *Dann*, we held that "[t]o establish such an individual right of occupancy, the [claimant] must show actual possession by occupancy, inclosure, or other actions establishing a right to the lands to the exclusion of adverse claimants." *Id*. at 1199 (citing *Cramer*, 261 U.S. at 236). We further explained that the occupancy giving rise to a *Cramer* claim must have begun *before* the property was withdrawn from settlement, and that the claimant (or her lineal ancestors) must have then *continuously* exercised the right to occupy the land. *Id*. at 1197-1200. We reiterated these factors in *Kent*. *See* 945 F.2d at 1444 (individual aboriginal title can be established "when an Indian can show that she or her lineal ancestors continuously occupied a parcel of land, *as individuals*, and that the period of continuous occupancy commenced before the land in question was withdrawn from entry for purposes of settlement.") (citing *Dann*, 873 F.2d at 1198-99) (emphasis in original)).

**[6]** Under *Cramer*, *Dann*, and *Kent*, Lowry must demonstrate her continuous occupancy of the Oak Bottom land. She cannot do so. Although Lowry can demonstrate that at least one of her lineal ancestors, Bessie Tripp, dwelt continuously in the Oak Bottom area between 1926 and 1982, Lowry does not contend that Bessie continuously lived on the *parcel of land* Lowry currently occupies. Bessie Tripp resided for the period between 1926 and 1982 on Indian Allotment 280, which adjoins, but does not include, the property that Lowry currently occupies. Lowry argues that the distinction between these parcels is immaterial because Bessie Tripp and the other residents of Allotment 280 treated Lowry's claimed parcel as part of their property. However, as the magistrate judge noted, Bessie *resided* on private property—Allotment 280—not on Forest Service land. There is no basis in the case law to

expand a claim of individual aboriginal title based on occupancy of one parcel of land to include another parcel that was never so occupied. Moreover, Bessie Tripp and the other residents did not use the claimed parcel in any of the ways discussed in *Dann* and *Kent*: There was no enclosure, no cultivation, and no residence on the property now occupied by Lowry.[7] We conclude that Lowry has not presented evidence of continuous occupancy of the disputed land and consequently, fails to establish her claim of individual aboriginal title.

IV

Alternatively, Lowry argues that the magistrate judge improperly precluded her from presenting evidence of irregularities in the Forest Service's prior denial of her request for an Indian allotment in 1990. She claims that her inability to challenge that denial violated her due process rights by foreclosing her defense that the Indian allotment proceeding was flawed and that, but for the flaws, she had a plausible ground for obtaining an Indian allotment. She asserts that, as a consequence, the denial of her allotment application "cannot be

---

[7]Even assuming that Bessie Tripp's occupancy at Allotment 280 somehow extended to the claimed parcel, Lowry still fails to make out a prima facie case of individual aboriginal title because she has not shown continuous occupancy since before the land was withdrawn from settlement. *See Dann*, 873 F.2d at 1197-99. As noted by the government, both Allotment 280 and the land constituting Lowry's residence were withdrawn from settlement either by President Theodore Roosevelt's proclamation creating the Klamath National Forest in 1905, *see* Proclamation of May 6, 34 Stat. 3001 (1905), or by the Forest Allotment Act in 1910, *see* Pub. L. No. 313, ch. 431, § 31, 36 Stat. 855, 863 (1910) (codified at 25 U.S.C. § 337). Because we must look to the period of *unbroken* occupancy extending back from the present, even assuming that Bessie Tripp's occupancy at Allotment 280 somehow extended to the claimed parcel, the earliest Lowry could trace her lineal ancestor's continuous occupancy was to 1926 —the year Bessie returned to Allotment 280 to take up her residence—or at least 16 years *after* the property was withdrawn from settlement.

used as a critical part of" the instant criminal prosecution against her.

**[7]** As the sole support for her collateral challenge, Lowry points to *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Mendoza-Lopez*, the Supreme Court allowed two Mexican nationals, who were charged with re-entry after deportation in violation of 8 U.S.C. § 1326, to introduce evidence of procedural due process violations that occurred in their deportation proceedings. *See* 481 U.S. at 830, 837-39. However, the Court clearly limited such a "collateral challenge" to situations "where the deportation proceeding *effectively eliminates the right of the alien to obtain judicial review*." *Id.* at 839 (emphasis added). The Court considered whether "the violation of respondents' rights that took place in this case *amounted to a complete deprivation of judicial review* of the determination," to decide if the use of the deportation determination to enhance the respondents' penalty for an unlawful entry under § 1326 would violate due process. *Id.* at 840. The Court held that because the immigration judge "permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation," the respondents had been deprived of judicial review. *Id.* (concluding that "the waivers of their rights to appeal [from the deportation proceeding] were not considered or intelligent").

**[8]** *Mendoza-Lopez* does not justify Lowry's collateral attack upon the Forest Service's recommendation to deny her application for an Indian allotment.[8] Lowry had a right to seek review of the denial in federal court, 25 U.S.C. § 345, or to

---

[8]Under 25 U.S.C. § 337, the Secretary of the Interior makes the decision to make an Indian allotment, but his determination must be informed by the Secretary of Agriculture's finding that the land is better suited to agriculture or grazing than to timber. The Forest Service is an agency within the Department of Agriculture.

file an original action in district court, 28 U.S.C. § 1353.[9] *See Christensen v. United States*, 755 F.2d 705 (9th Cir. 1985). The availability of this relief undermines any possible application that *Mendoza-Lopez* might have in this case; the entire rationale of that case—that the respondents had been deprived of judicial review—simply bears no relevance to Lowry's claim. Indeed, allowing Lowry to collaterally attack the administrative proceedings would effectively circumvent the six-year statute of limitations we have held governs review of such actions. *See Christensen*, 755 F.2d at 707-08 (holding that 25 U.S.C. § 345 gives federal courts jurisdiction over action seeking review of government's failure to grant application for Indian allotment, but dismissing action as time-barred). Because Lowry declined to exercise her rights to seek judicial review of the denial of her application, the district court did not err in concluding that it lacked jurisdiction to consider Lowry's collateral attack on her administrative proceedings as part of the present criminal action.

V

For the foregoing reasons, we affirm the judgment of conviction.

**AFFIRMED.**

---

[9]It is possible that the Administrative Procedure Act, 5 U.S.C. §§ 701-06, provided an additional avenue for judicial review.