**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

RAYMOND LEO JARLIK BELL, AKA
Raymond Leo Bell,
*Defendant-Appellant*.

No. 13-30163

D.C. No.
3:11-cr-05407-
RBL-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
August 28, 2014—Seattle, Washington

Filed October 22, 2014

Before: Michael D. Hawkins, Susan P. Graber,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould;
Concurrence by Judge Hawkins

## SUMMARY[*]

### Criminal Law

The panel affirmed in part and vacated in part the district court's judgment, and remanded, in a case in which the defendant was convicted of making false, fictitious, and fraudulent claims to the United States Treasury; assisting in the filing of false tax returns; criminal contempt; and mail fraud.

The panel rejected the defendant's contention that the district court committed reversible error under the Sixth Amendment by not prompting him to present a closing argument, where the defendant, who represented himself, had a meaningful opportunity to make a closing argument but chose to remain silent. The panel wrote that nothing in *Herring v. New York*, 422 U.S. 853 (1975), or this court's precedents gives a self-represented defendant a right to be affirmatively and individually advised that he or she has a right to present a closing argument.

The panel held that a rational jury could find beyond a reasonable doubt that the defendant assisted his son in preparing the latter's fraudulent returns in violation of 26 U.S.C. § 7206(2).

The panel vacated supervised-release conditions requiring the defendant to undergo substance abuse treatment and to abstain from consuming alcohol, and remanded with

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

instructions that the district court explain its reasons if it chooses to re-impose them, where the record contains no evidence showing that the defendant abused alcohol or other substances.

Concurring, Judge Hawkins would affirm on the narrower grounds that the defendant's non-participation during the course of the trial and his failure to object or request argument effectively waived his right to make a closing argument. Judge Hawkins would not say that a defendant in a criminal case, pro se or otherwise, need not be advised of an opportunity to make closing remarks to the jury.

## COUNSEL

Gregory Charles Link (argued), Washington Appellate Project, Seattle, Washington, for Defendant-Appellant.

Jenny A. Durkan, United States Attorney, Michael Symington Morgan (argued), Assistant United States Attorney, Seattle, Washington, for Plaintiff-Appellee.

## OPINION

GOULD, Circuit Judge:

Raymond Bell ("Bell") appeals from his jury convictions for making false, fictitious, and fraudulent claims to the United States Treasury under 18 U.S.C. § 287, assisting in the filing of false tax returns under 26 U.S.C. § 7206(2), criminal contempt under 18 U.S.C. § 401(3), and mail fraud under 18 U.S.C. § 1341. Bell also appeals the district court's supervised release conditions imposed as part of his sentence. We must decide (1) whether the district court committed reversible error under the Sixth Amendment when it did not prompt Bell to present a closing argument; (2) whether the government provided sufficient evidence to prove that Bell assisted Steven Bell in the filing of fraudulent tax returns; and (3) whether the district court abused its discretion in requiring Bell to abstain from alcohol and drug consumption and participate in treatment as conditions of his supervised release.

**I**

This case concerns a tax scheme involving false Form 1099-OIDs. In the scheme, a taxpayer would file Form 1099-OIDs that "falsely state an amount of income tax has been withheld . . . and the taxpayer then relies on that false withholding figure to submit a fraudulent refund claim."

Using this scheme, Bell filed five false income tax returns. The table below gives an overview of the false returns.

| Return Year | Income Claimed | Form 1099-OID Income Claimed | Refund Requested from OID Withholding |
|---|---|---|---|
| 2004 | $-520 | N/A | $36,395 |
| 2006 | 0 | $45,823 | $42,418 |
| 2007 | $13,240 | $113,940 | $112,069 |
| 2007 (amended) | $13,240 | $113,940 | $94,756 |
| 2008 | $10,344 | $141,975 | $113,798 |

The 2004, 2006, and original 2007 returns claimed refunds alleging that tax had been withheld as evidenced by Form 1099-OIDs, but no Form 1099-OIDs were filed with the returns. For the amended 2007 return, Bell filed three false Form 1099-OIDs, along with a Form 1096 on which Bell signed his identifying title as "Agent." For the 2008 return, Bell sent the IRS false Form 1099-OIDs after receiving a request for documentation by the IRS.

In addition to the false submissions and fraudulent refund claims on his own tax returns, Bell also promoted the Form 1099-OID tax scheme to other people. From October 2008 to October 2009, Bell assisted six taxpayers in filing fifteen tax returns using the Form 1099-OID scheme, which collectively requested over $2.7 million in unwarranted refunds, and caused the IRS mistakenly to make refund payments exceeding $670,000.

In November 2008, Bell's son Steven Bell signed and submitted three amended returns seeking refunds from $20,000 to $30,000 each year based on false OID withholdings.    The returns included Form 1099-OIDs purportedly issued by a financial institution showing tax withholding, and each return was accompanied by a Form 1096, which Steven Bell signed, noting his title as "Agent."

The original indictment against Bell was filed on August 10, 2011, and two superseding indictments followed. Between the first and second superseding indictments, Bell moved to proceed pro se and the district court granted his motion after a *Faretta* hearing.  The criminal proceedings show Bell's consistent refusal to recognize the authority of the district court or to participate in the proceedings, including filing a motion to dismiss styled as a "habeas corpus petition" arguing that his prosecution was illegal because he was not subject to federal tax laws; declaring his "sovereignty as a chief ruler" who was "independent of the Court" and enjoying "sovereign immunity"; declining the offer for an opportunity to give an opening statement; and repeatedly stating that he did not consent to the proceedings and was reserving his rights pursuant to U.C.C. § 1-308.

At trial, after the district court delivered jury instructions, the government gave its closing argument.  The district court did not prompt Bell to make a closing argument, and Bell remained silent.  The jury convicted Bell as charged.  The district court calculated Bell's Guidelines range to be 97 to 121 months and sentenced him to 97 months followed by three years of supervised release.  Among the conditions of his supervised release, the district court ordered Bell to undergo substance abuse treatment and to abstain from consuming alcohol.

## II

We review Bell's sufficiency of evidence challenge for plain error because he did not raise the challenge below. *United States v. Lowry*, 512 F.3d 1194, 1198 n.3 (9th Cir. 2008). We view the evidence in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). We review Bell's Sixth Amendment challenge and his supervised release conditions for plain error because he did not raise these objections before the district court. *Johnson v. United States*, 520 U.S. 461, 466–67 (1997); *United States v. Becker*, 682 F.3d 1210, 1212 (9th Cir. 2012).

## III

## A

Bell first contends that the district court erred by not affording him the opportunity to present a closing argument to the jury and that this is a reversible error in violation of his Sixth Amendment right to counsel. The constitutional right to assistance of counsel includes the right for defense counsel to "make a closing summation to the jury." *Herring v. New York*, 422 U.S. 853, 858 (1975). This right applies equally to a self-represented defendant, who is his or her own counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). To meet the plain error standard of review, Bell must "show that the district court made (1) an error (2) that was clear or obvious, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity or public reputation of judicial

proceedings." *United States v. Castillo-Marin*, 684 F.3d 914, 918 (9th Cir. 2012).

We have previously held that denial of a defendant's legitimate request to make a closing argument violates the defendant's constitutional right to counsel. *Frost v. Van Boening*, 757 F.3d 910, 915–16 (9th Cir. 2014) (en banc); *United States v. Miguel*, 338 F.3d 995, 1002 (9th Cir. 2003); *United States v. Kellington*, 217 F.3d 1084, 1100 (9th Cir. 2000). In support of his Sixth Amendment challenge, Bell cites *United States v. Mack*, 362 F.3d 597, 602 (9th Cir. 2004), which holds that the district court's decision to remove a disruptive criminal defendant from the courtroom throughout trial violated the defendant's Sixth Amendment right to counsel because he was precluded from (1) calling and examining witnesses and (2) making a closing argument to the jury.

But Bell's situation is different because he was not precluded from making a closing argument. The district court told all parties just before recess that when proceedings resumed the court would entertain Rule 29 motions and objections to the proposed jury instructions, and then "we are going to have closing arguments." When the government's counsel delivered his closing argument, Bell remained silent. Nothing in *Herring* or our precedents gives a self-represented defendant a right to be affirmatively and individually advised that he or she has a right to present a closing argument. Rather, these cases held that a court may not prevent a litigant from making a closing argument. Bell's Sixth Amendment right was not violated because he was not precluded from making his closing argument and simply chose to remain silent.

A review of the facts in *Herring* is instructive. There, a New York statute gave its trial judges the discretion to deny counsel an opportunity to make a closing summation in a nonjury criminal trial. *Herring*, 422 U.S. at 853–54. At the conclusion of the case for the defense, defense counsel asked to make a closing summation. *Id.* at 856. The trial judge denied permission on the ground that under the new statute, summation is discretionary, and he chose "not to hear summations." *Id*. The judge found the defendant guilty of attempted robbery in the third degree. *Id*. The United States Supreme Court held that the New York statute violated the defendant's constitutional right to counsel, because the defense has the right "to make a closing summary of the evidence to the trier of the facts, whether judge or jury." *Id.* at 860. *Herring* arose in the setting where a criminal defendant's counsel sought to make an argument in summation but was precluded by the trial court in reliance on the New York statute giving its judges discretion to dispense with arguments if they chose to do so. Nothing in that case or in any precedents of the Supreme Court following it, or in our circuit precedents, establishes a right of the criminal defendant to be told, in some *Miranda*-type warning, that he or she has the right to make a closing argument. Bell never asked to make an argument, even though it was plainly available to him. Here, Bell had a meaningful opportunity to make a closing argument but chose to remain silent. When the district court advised before recess that "we will come back with closing arguments," Bell reiterated that he did "not consent to these proceedings," and he gave the same statement when the district court heard Rule 29 motions, when objections to jury instructions were entertained, and

again when the parties rested before the jury. He was not precluded from making a closing argument.[1]

## B

Bell next contends that the government did not present sufficient evidence to prove that he assisted, advised, or counseled Steven Bell in the preparation of Steven Bell's fraudulent returns under 26 U.S.C. § 7206(2). Bell contends that "the government offered no evidence beyond Mr. Bell's mere association with his son that he assisted in any fashion with the three returns." Bell did not raise this claim before the district court, so we review for plain error. *Lowry*, 512 F.3d at 1198 n.3.

The government presented evidence that the Form 1099-OID scheme that Bell employed changed in implementation over time. At the time that Steven Bell submitted his false returns, Bell was preparing false returns that included Form

---

[1] We do not intend to reduce the general duties that a trial court owes to a pro se litigant, but a rigid advisement is not required when it is clear from the record that the litigant was aware of the procedure and that the court did not stand in the litigant's way.

Alternatively, Bell's consistent disregard of the district court's authority and jurisdiction might be viewed to be an implied waiver of his right to present a closing argument. Other circuits have held that the right to present a closing argument may be waived implicitly, and that a judge does not have to invite a defendant to present an argument for the waiver to be effective. *See, e.g.*, *United States v. Stenzel*, 49 F.3d 658, 661–62 (10th Cir. 1995); *United States v. Martinez*, 974 F.2d 589, 590 (5th Cir. 1992); *United States v. Spears*, 671 F.2d 991, 994–95 (7th Cir. 1982). Conversely, Supreme Court precedent in *Johnson v. Zerbst*, 304 U.S. 458, 465 (1938) requires that a waiver of constitutional right be "intelligent and competent." We need not and do not reach the issue of implied waiver.

1099-OIDs accompanied by a Form 1096, and Bell listed his title on the Form 1096 forms as "agent." Steven Bell's false returns followed the same pattern. Bell was only one of many people using the Form 1099-OID scheme. But his implementation patterns evolved, and the form of Steven Bell's false returns corresponds with Bell's practices at the time. Two Form 1099-OIDs accompanying Bell's amended 2007 return had handwritten corrections resembling handwritten corrections on Steven Bell's returns. Viewing the evidence in the light most favorable to the government, a rational jury could find beyond a reasonable doubt that Bell assisted Steven Bell in preparing the latter's fraudulent returns.

## C

Finally, Bell contends that the district court erred in imposing two specific conditions of supervised release (1) that Bell "participate . . . for treatment of narcotic addition, drug dependency, or substance abuse" and (2) that Bell "abstain from the use of alcohol and/or other intoxicants." The conditions of Bell's supervised release are reviewed for plain error because he did not object to the conditions before the district court. *Becker*, 682 F.3d at 1212.

A district court has broad discretion to impose special conditions on supervised release. *United States v. Chinske*, 978 F.2d 557, 559–60 (9th Cir. 1992). Discretionary conditions may be ordered when they involve "no greater deprivation of liberty than is reasonably necessary" and when they are reasonably related to (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for adequate deterrence to criminal conduct; (4) the need to protect the

public from further crimes of the defendant; and (5) the need to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. §§ 3553(a)(1), (a)(2)(B)–(D), 3583(d)(2).

The record contains no evidence showing that Bell abused alcohol or other substances, and the district court made no relevant findings during the sentencing hearing. The government notes that the present record contains no information about Bell's substance abuse history because he refused to cooperate with the Probation Department during the presentence investigation. If Bell's refusal to cooperate is the reason for the district court's silence in its fact finding, the district court should make a finding explaining that, but without more evidence it is difficult to infer merely from Bell's intransigent refusal to cooperate with the court that he had a drug or alcohol abuse problem. *See, e.g.*, *United States v. Betts*, 511 F.3d 872, 878–80 (9th Cir. 2007) (requiring a reasonable relationship between conditions imposed and goals of 18 U.S.C. § 3583). We vacate the challenged conditions and remand with instructions that the district court explain its reasons for imposing the special conditions for Bell's supervised release, if the court chooses to re-impose them.

**AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

HAWKINS, Senior Circuit Judge, concurring:

There is a certain value in saying what is necessary and no more. Here, although I have no quarrel with the bottom line result, I am concerned that the majority goes further than needed in announcing, for the first time anywhere, that a pro se criminal defendant has no right to be advised of the opportunity to present closing argument.

I agree, given the litigation history of this case, that the failure to ask Raymond Bell if he wished to make a closing statement to the jury was not error. Certainly the better practice would have been to ask, particularly in the circumstances of this case where the district court urged the jury to listen carefully to the arguments of the prosecution and Bell's represented co-defendant who both proceeded to make arguments attempting to undermine Bell's case.

I would affirm, but on the narrower grounds that Bell's non-participation during the course of the trial and his failure to object or request argument effectively waived his right to make a closing argument. I would not say, as I think the majority does, that a defendant in a criminal case, pro se or otherwise, need not be advised of an opportunity to make closing remarks to the jury.