**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| BIG LAGOON RANCHERIA, a federally recognized Indian tribe, *Plaintiff-Appellee/ Cross-Appellant*, | Nos. 10-17803 10-17878 |
| v. | D.C. No. 4:09-cv-01471- CW |
| STATE OF CALIFORNIA, *Defendant-Appellant/ Cross-Appellee*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, Chief District Judge, Presiding

Argued and Submitted En Banc
September 17, 2014—San Francisco, California

Filed June 4, 2015

Before: Harry Pregerson, Stephen Reinhardt, Alex
Kozinski, Diarmuid F. O'Scannlain, Susan P. Graber,
William A. Fletcher, Richard A. Paez, Jay S. Bybee, Milan
D. Smith, Jr., Morgan Christen and Jacqueline H. Nguyen,
Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Indian Gaming Regulatory Act

The en banc court affirmed the district court's summary judgment in favor of a tribe that alleged that the State of California had failed to negotiate in good faith for a gaming compact under the Indian Gaming Regulatory Act for Class III gaming on a parcel of land taken into trust for the tribe by the Bureau of Indian Affairs.

Rejecting California's argument that the tribe lacked standing to compel it to negotiate in good faith under the IGRA, the en banc court held that the State's argument amounted to an improper collateral attack on the BIA's decisions to take the parcel of land into trust and to designate the tribe as a federally recognized Indian tribe.

The en banc court held that the district court did not abuse its discretion in failing to grant a continuance for additional discovery under Fed. R. Civ. P. 56(f).

The en banc court dismissed the tribe's cross-appeal as moot.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael A. Pollard, Baker & McKenzie, Chicago, Illinois, argued the cause for the plaintiff-appellee/cross-appellant. Bruce H. Jackson, Baker & McKenzie, San Francisco, California filed the briefs for the plaintiff-appellee/cross-appellant Big Lagoon Rancheria.  With him on the briefs were Peter J. Engstrom and Irene V. Gutierrez, San Francisco, California.

Peter H. Kaufman, Deputy Attorney General for the State of California, San Diego, California, argued the cause for defendant-appellant/cross-appellee the State of California. Kamala D. Harris, Attorney General of California, filed the briefs for the defendant-appellant/cross-appellee. With her on the briefs were Sara J. Drake, Senior Assistant Attorney General, and Randall A. Pinal, Deputy Attorney General, San Diego, California.

Samuel Hirsch, Acting Assistant Attorney General, Washington, D.C., argued the cause for amicus curiae the United States of America. Robert G. Dreher, Acting Assistant Attorney General filed the brief on behalf of amicus curiae the United States of America in support of the plaintiff-appellee/cross-appellant. With him on the brief were Jennifer Turner and Rebecca Ross, Office of the Solicitor, U.S. Department of the Interior, Washington, D.C., and Amber B. Blaha, Elizabeth A. Peterson, and Kate R. Bowers, United States Department of Justice, Environmental & Natural Resources Division, Washington, D.C.

Kenneth J. Pfaehler, Dentons US LLP, Washington, D.C., filed the brief on behalf of amici curiae National Congress of American Indians, United South and Eastern Tribes, Inc., and

The Navajo Nation in support of plaintiff-appellee/cross-appellant. With him on the brief were V. Heather Sibbison and Samuel F. Daughety, Dentons US LLP, Washington, D.C., and Riyaz A. Kanji, Kanji & Katzen PLLC, Ann Arbor, Michigan.

Dorothy Ann Alther, California Indian Legal Services, Escondido, California, filed the brief on behalf of amici curiae California Indian Legal Services and California Association of Tribal Governments in support of plaintiff-appellee/cross-appellant.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether, in the course of negotiations under the Indian Gaming Regulatory Act, a state can challenge a Bureau of Indian Affairs decision to hold a parcel of land in trust for an Indian tribe and whether it can challenge the tribe's federally recognized status.

I

A

This litigation is between a small federally recognized Indian tribe which wishes to build and to operate a class III gaming casino and hotel on tribal trust land and the State of California, which seeks to regulate or to oppose such activity.

To regulate gaming on Indian lands, Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq.

(the "IGRA"), which created a "cooperative federalis[t]" framework that "balance[d] the competing sovereign interests of the federal government, state governments, and Indian tribes, by giving each a role in the regulatory scheme." *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1096 (9th Cir. 2003) (quoting *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1092 (E.D. Cal. 2002)). The IGRA assigns authority to regulate gaming to tribal and state governments depending on the class of gaming involved.

Class I gaming includes "'social games solely for prizes of minimal value or traditional forms of Indian gaming engaged in by individuals as part of, or in connection with, tribal ceremonies or celebrations,' 25 U.S.C. § 2703(6), and its regulation is left exclusively within the jurisdiction of the Indian tribes, *id.* § 2710(a)(1)." *Id.* at 1096–97. "Class II gaming includes bingo . . . and certain card games . . . but excludes any banked card games, electronic games of chance, and slot machines." *Id.* at 1097. Class III gaming includes "all forms of gaming that are not class I gaming or class II gaming." 25 U.S.C. § 2703(8). Class III gaming, which is contemplated by the tribe here, often involves "the types of high-stakes games usually associated with Nevada-style gambling." *In re Indian Gaming Related Cases*, 331 F.3d at 1097.

B

The IGRA sets out detailed procedures for Indian tribes seeking to conduct class III gaming, which is allowed on Indian lands only if "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State." 25 U.S.C. § 2710(d)(1)(C). Negotiations for a gaming compact begin at the request of an "Indian tribe having

jurisdiction over the Indian lands upon which a class III gaming activity is being conducted, or is to be conducted." *Id*. § 2710(d)(3)(A). The Indian tribe's request triggers the state's obligation to negotiate in good faith. *Id*.

If negotiations are successful, the tribe and the state will enter into a compact to allow class III gaming subject to the approval of the Secretary of the Interior. *Id*. § 2710(d)(3)(B). If negotiations are unsuccessful, the tribe can sue the state in district court. *Id*. § 2710(d)(7)(A)(I). If, in turn, the district court finds that the state has failed to negotiate in good faith, it must order the parties to reach an agreement. *Id*. § 2710(d)(7)(B)(iii). If no agreement is reached after 60 days, the court must order each party to submit a proposal to a court-appointed mediator, who selects the proposal that best comports with the IGRA and other federal laws. *Id*. § 2710(d)(7)(B)(iv).

Of course, gaming is confined to "Indian lands" and negotiations are begun by a tribe with jurisdiction over such lands. The IGRA defines "Indian lands" as "all lands within the limits of any Indian reservation" and "any lands title to which is . . . held in trust by the United States for the benefit of any Indian tribe or individual . . . and over which an Indian tribe exercises governmental power." *Id*. § 2703(4).

The Bureau of Indian Affairs (the "BIA") obtains authority to hold land in trust for Indian tribes from the Indian Reorganization Act, 25 U.S.C. §§ 461 et seq. (the "IRA"), under which the Secretary of the Interior is authorized "to acquire . . . any interest in lands . . . for the purpose of providing land for Indians" and to hold those lands "in trust for the Indian tribe or individual Indian for which the land is acquired." *Id*. § 465. Indians include "all persons of Indian

descent who are members of any recognized Indian tribe now under Federal jurisdiction." *Id*. § 479.

## C

Big Lagoon Rancheria is a federally recognized Indian tribe located on the shoreline of Big Lagoon near Trinidad in Humboldt County, California. It claims jurisdiction over two parcels of land adjacent to one another. One consists of nine acres purchased by the United States in 1918. The other consists of eleven acres taken into trust for Big Lagoon Rancheria by the BIA in 1994. Big Lagoon Rancheria seeks to operate a class III gaming casino and hotel on the eleven-acre parcel held in trust for the tribe.

## 1

In 1918, the BIA purchased the nine-acre parcel for James Charley and his family. Charley, an Indian whose family lived on the parcel, died soon thereafter, and his wife moved the rest of the family away. One of Charley's sons, Robert Charley, may have lived at Big Lagoon between 1942 and 1946, but the nine-acre parcel otherwise appears to have remained vacant. Later, in the late 1940s or early 1950s, Robert's nephew by marriage, Thomas Williams, and his family obtained the BIA's permission to camp on the land. Though they did not have a claim of ownership, they apparently constructed a home there.

The Williamses came to view the land as a "rancheria" eligible for termination under the California Rancheria

Termination Act, Pub. L. No. 85-671, 72 Stat. 619 (1958).[1] They applied for dissolution of the rancheria—a step that would have distributed the land to individual tribe members—in 1967. Although approved, the dissolution never took place.

Big Lagoon Rancheria first appeared on a list of "Indian Tribal Entities that Have a Government-to-Government Relationship with the United States" in 1979, 44 Fed. Reg. 7235 (Feb. 6, 1979), and has appeared on many subsequent lists. The BIA has held the nine-acre parcel in trust for the tribe under 25 U.S.C. § 465 since at least 1979.

2

In 1994, the BIA took the eleven-acre parcel that is the focus of this appeal in trust for Big Lagoon Rancheria. It is unclear exactly when the State of California became aware of the entrustment decision. But the State's interests were plainly affected, and the State was plainly aware in 1997, when it petitioned to intervene and subsequently filed two amicus briefs before the Department of the Interior Board of Indian Appeals in a challenge to the BIA's decision. *Big Lagoon Park Co., Inc. v. Acting Sacramento Area Dir., Bureau of Indian Affairs*, 32 IBIA 309, 312 (1998). Moreover, California has by its own admission been aware of

---

[1] "Rancherias are numerous small Indian reservations or communities in California, the lands for which were purchased by the Government (with Congressional authorization) for Indian use from time to time in the early years of [the twentieth] century—a program triggered by an inquiry (in 1905–06) into the landless, homeless or penurious state of many California Indians." *Williams v. Gover*, 490 F.3d 785, 787 (9th Cir. 2007) (alteration in original) (quoting *Duncan v. United States*, 667 F.2d 36, 38 (1981)) (internal quotation marks omitted).

the entrustment and the potential for casino gambling on the eleven-acre parcel since 1998, when the State began negotiating with Big Lagoon Rancheria directly with respect to the eleven-acre parcel.

II

When negotiations to build the hotel and casino broke down in 1999, Big Lagoon Rancheria sued the state of California under the IGRA, alleging that California had failed to negotiate in good faith. In 2000, as part of the litigation, the state questioned whether "the lands on which Big Lagoon proposed to build its casino were Indian lands over which Big Lagoon properly had jurisdiction to conduct gaming activities."

The 1999 lawsuit was dismissed without prejudice as part of a settlement in 2005 when Big Lagoon Rancheria and the state reached an agreement allowing the tribe to build a hotel and casino. That agreement, known as the Barstow Compact, lapsed in 2007 because the California legislature failed to ratify it. Negotiations then began anew, but again failed, foundering principally because the state insisted on environmental mitigation measures related to the casino's construction as well as a share of Big Lagoon Rancheria's revenue from gaming. Throughout the course of the negotiations, the state proceeded on the assumption that it was obligated to negotiate in good faith under the IGRA.

Big Lagoon Rancheria filed the instant suit in district court in 2009, once again alleging under 25 U.S.C. § 2710(d)(7)(A)(i) that California had failed to negotiate in good faith. The tribe substantially prevailed when the district court declared that California had failed to negotiate in good

faith and that the tribe was entitled to conduct gaming subject only to the Secretary of the Interior's approval of a gaming compact. *Big Lagoon Rancheria v. California*, 759 F. Supp. 2d 1149, 1160 (N.D. Cal. 2010). The State of California appeals from the district court's adverse grant of summary judgment, and also appeals the district court's order refusing to grant a continuance to conduct additional discovery under Fed. R. Civ. P. 56(f),[2] now Fed. R. Civ. P. 56(d).[3] Big Lagoon Rancheria cross-appeals, challenging the district court's ruling that negotiation over environmental measures did not necessarily constitute bad faith by California.[4]

---

[2] The 2010 amendments to the Federal Rules of Civil Procedure moved the language contained at Fed. R. Civ. P. 56(f) to Fed. R. Civ. P. 56(d). As the notes of the Advisory Committee explain, new "subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."

[3] We review the district court's grant of summary judgment de novo. *Butte Envtl. Council v. U.S. Army Corps of Eng'rs*, 620 F.3d 936, 945 (9th Cir. 2010) (citing *Bering Strait Citizens for Responsible Res. Dev. v. U.S. Army Corps of Eng'rs*, 524 F.3d 938, 946 (9th Cir. 2008)). "[W]e determine whether there are any genuine issues of material fact for trial, viewing the evidence in the light most favorable to the nonmovant." *Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.*, 531 F.3d 767, 772 (9th Cir. 2008) (citation omitted). We review the district court's decision to deny a continuance under Fed. R. Civ. P. 56(f) for abuse of discretion. *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

[4] A divided three-judge panel of this court reversed the judgment of the district court, *Big Lagoon Rancheria v. California*, 741 F.3d 1032, 1045 (9th Cir. 2014), holding that California was not obligated to negotiate in good faith under the IGRA because the eleven-acre parcel was not properly taken into trust by the BIA. We subsequently granted rehearing en banc, vacating the three-judge panel decision. *Big Lagoon Rancheria v. California*, 758 F.3d 1073 (9th Cir. 2014).

III

A

California first argues that Big Lagoon Rancheria lacks standing to compel it to negotiate in good faith under the IGRA because the BIA's 1994 entrustment decision was improper and because it is not properly recognized as an Indian tribe. Although the State frames these issues in terms of challenges to standing and asserts them as affirmative defenses, the State's arguments amount to collateral attacks on the BIA's 1994 decision to take the eleven-acre parcel into trust and its pre-1979 designation of Big Lagoon Rancheria as an Indian tribe.

1

The State's principal argument is that Big Lagoon Rancheria is not entitled to enter into good faith negotiations under the IGRA because the BIA lacked the authority to take the eleven-acre parcel into trust, relying on *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009).

*Carcieri* involved a challenge by the State of Rhode Island, the State's governor, and the town of Charleston, Rhode Island to the Secretary of the Interior's decision to take thirty-one acres of land into trust on behalf of the Narragansett Tribe. As in Big Lagoon Rancheria's case, the Secretary had taken the land into trust "for the purpose of providing land for Indians" based on his authority under Section 465 of the IRA. *See id.* at 381–82; 25 U.S.C. § 465. The tribe had wished "to free itself from compliance with local regulations" governing construction of housing. *Carcieri*, 555 U.S. at 385. In response, the state, the governor,

and the town of Charleston timely "sought review of the . . . decision [to take the land into trust] pursuant to the Administrative Procedure Act ["APA"]." *Id*. The district court granted summary judgment in favor of the Narragansett tribe, and the First Circuit affirmed, first in a panel decision and then sitting en banc. *Id*. at 385–86.

The Supreme Court reversed. It held that the term "'now under Federal jurisdiction' in § 479 unambiguously refers to those tribes that were under the federal jurisdiction of the United States when the IRA was enacted in 1934." *Id*. at 395. The Narragansett tribe was not recognized by the United States until 1983, meaning that the Secretary of the Interior's decision to take land into trust for the Narraganset was invalid. *Id*. at 385. Therefore, under *Carcieri*, if a tribe was not under federal jurisdiction in 1934, the BIA lacks the authority to take land into trust on its behalf.

The present case is distinguishable from *Carcieri*, which involved a timely administrative challenge brought against the Secretary of the Interior.  The instant case is a belated collateral attack. *Carcieri* does not address whether the BIA's entrustment decisions can be challenged outside an action brought under the APA or outside the statute of limitations for APA actions.

2

The Supreme Court has explained that a challenge to the BIA's "decision to take land into trust" is "a garden-variety APA claim." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2208 (2012) (citing 5 U.S.C. § 706(2)(A), (C)).   Such claims

"assert[] merely that the Secretary [] [of the Interior's] decision to take land into trust violates a federal statute." *Id.*

We have recently observed that parties cannot "use a collateral proceeding to end-run the procedural requirements governing appeals of administrative decisions." *United States v. Backlund*, 689 F.3d 986, 1000 (9th Cir. 2012). For example, in *United States v. Lowry*, 512 F.3d 1194 (9th Cir. 2008), we held that a criminal defendant who "declined to exercise her right to seek direct judicial review of the agency decision [in question] within the time allowed" could not "collaterally attack it in a subsequent criminal proceeding." *Backlund*, 689 F.3d at 1000 (citing *Lowry*, 512 F.3d at 1203). "[A]llowing [the defendant] to collaterally attack the administrative proceedings would effectively circumvent the six-year statute of limitations we have held governs review of such actions." *Lowry*, 512 F.3d at 1203.

While California asserts that Big Lagoon Rancheria lacks standing to invoke the IGRA, it necessarily argues that the BIA exceeded its authority when it took the eleven-acre parcel into trust. The proper vehicle to make such a challenge is a petition for review pursuant to the APA, and that is the typical method employed in prior litigation challenging entrustment decisions. *See, e.g.*, *Patchak*, 132 S. Ct. at 2210–11 (allowing an APA challenge to the government's decision to take land into trust for the benefit of an Indian tribe under 25 U.S.C. § 465); *Carcieri*, 555 U.S. at 385 ("Petitioners sought review of the IBIA decision [upholding the government's decision to take land into trust] pursuant to the Administrative Procedure Act . . . .").

Allowing California to attack collaterally the BIA's decision to take the eleven-acre parcel into trust outside the

APA would constitute just the sort of end-run that we have previously refused to allow, and would cast a cloud of doubt over countless acres of land that have been taken into trust for tribes recognized by the federal government.

### 3

And, of course, California has not brought an APA action in this case, nor has it joined the United States, the Secretary of the Interior, or any other federal government official. *See, e.g.*, *Carcieri*, 555 U.S. 385–86 ("Petitioners sought review of the IBIA decision pursuant to the" APA and named "the Secretary [of the Interior] and other Department of Interior officials" as defendants.); 5 U.S.C. §§ 702, 703 (waiving the United States's sovereign immunity where persons have "suffer[ed] legal wrong because of agency action" or have been "adversely affected or aggrieved by agency action" and allowing an "action for judicial review" against "the United States, the agency by its official title, or the appropriate officer" where "no special statutory review proceeding is applicable").

Moreover, even if California had brought an APA claim, such an action would be time barred. 28 U.S.C. § 2401(a) creates a general six-year statute of limitations for actions brought against the United States. 28 U.S.C. § 2401(a) ("Except as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). We have held that this rule "applies to actions brought under the APA." *Wind River Mining Corp. v.*

*United States*, 946 F.2d 710, 713 (9th Cir. 1991).[5] Therefore, California's arguments that the BIA does not properly hold the eleven-acre parcel in trust for Big Lagoon Rancheria fail, both because the state has failed to file the appropriate APA action and because such an APA challenge would be time-barred.

B

The State also challenges the BIA's recognition of Big Lagoon Rancheria as an Indian tribe. The thrust of the State's argument is that it is unclear how the tribe came to appear on the list of "Indian Tribal Entities" in 1979 and that such uncertainty gives rise to an issue of material fact precluding summary judgment.

California has not brought an APA challenge to the BIA's determination, and, like the challenge to the BIA's entrustment decision with respect to the eleven-acre parcel, such a challenge would be time-barred for the reasons stated in Part III(A)(3), *supra*.

---

[5] In *Wind River*, we recognized an exception to the six-year statute of limitations when "a challenger contests the substance of an agency decision . . . by filing a complaint for review of the adverse application of the decision to a particular challenger." *Wind River*, 946 F.2d at 715. We reasoned that a cause of action should be understood to "accrue" six years following the application of the decision to a particular challenger under those circumstances because "[t]he government should not be permitted to avoid all challenges to its actions, even if *ultra vires*, simply because the agency took the action long before anyone discovered the true state of affairs." *Id*. That exception is inapplicable here because California understood the "true state of affairs" concerning the BIA's decision to take the eleven-acre parcel into trust by, at the very latest, 1997, when it filed amicus briefs in a proceeding challenging the BIA's authority to take the eleven-acre parcel into trust.

IV

California also appeals the district court's decision not to grant a continuance under Fed. R. Civ. P. 56(f). When a district court refuses to grant a motion for a continuance, we have found abuse of discretion only "'if the movant diligently pursued its previous discovery opportunities, and if the movant can show how allowing additional discovery would have precluded summary judgment.'" *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (quoting *Qualls v. Blue Cross of Cal., Inc.*, 22 F.3d 839, 844 (9th Cir. 1994)).

The district court ruled that the State was not entitled to a continuance because "the status of the Tribe and its eleven-acre parcel has no bearing on whether the State negotiated in good faith." *Big Lagoon*, 759 F. Supp. 2d at 1160. Effectively, the district court concluded that whether Big Lagoon Rancheria is properly recognized as a tribe and whether the eleven-acre parcel is properly held in trust are irrelevant to whether the State was obligated to negotiate in good faith. While the State's claims fail in this case, such considerations might not be irrelevant in a case involving a timely APA claim.

Nonetheless, the district court also observed that the State "was [not] reasonably diligent in seeking discovery" on an earlier motion to stay all proceedings except discovery in the district court. The record provides ample support for that conclusion. The parties agreed to one extension of the discovery deadline, and the court granted another. The deadline for filing dispositive motions was likewise extended twice in the district court, once by agreement of the parties and once by the court. In addition, the State waited until mid-

December 2009—very near the end of the discovery period—to serve the BIA with a document subpoena. Because the State failed to demonstrate that it "diligently pursued its previous discovery opportunities," the district court did not abuse its discretion when it denied the State's motion for a continuance. *U.S. Cellular*, 281 F.3d at 934.

V

On cross-appeal, Big Lagoon Rancheria challenges the district court's ruling that the State's negotiation over environmental measures did not necessarily constitute bad faith. The district court concluded that "environmental mitigation measures are a permissible subject for negotiation under [the] IGRA" under certain circumstances so long as the State offered "as a meaningful concession gaming rights that are more expansive than allowed to otherwise similarly situated tribes." *Big Lagoon*, 759 F. Supp. 2d at 1162. It found that the State had not offered meaningful concessions, but stopped short of holding that a request for environmental mitigation necessarily constitutes bad faith. *Id.*

"A case is moot on appeal if no live controversy remains at the time the court of appeals hears the case." *NASD Dispute Resolution, Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007). We have held that "[t]he test for whether such a controversy exists is 'whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor.'" *Id.* (quoting *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005)).

The district court ordered the State to reach a gaming compact with Big Lagoon Rancheria to govern class III gaming. *Big Lagoon*, 759 F. Supp. 2d at 1163. Subsequently,

a mediator selected by the district court chose Big Lagoon Rancheria's proposal as the one that would govern gaming at Big Lagoon. All that remains is for the mediator to notify the Secretary of the Interior of his selection, and, if the Secretary of the Interior approves the compact, Big Lagoon Rancheria will be authorized to build the casino and engage in the gaming that it seeks. Big Lagoon Rancheria can receive no further relief on its cross-appeal which is therefore moot.

## VI

For the reasons explained above, the judgment of the district court is **AFFIRMED**. Big Lagoon Rancheria's cross-appeal is **DISMISSED** as moot.[6]

---

[6] Big Lagoon Rancheria's Request to Take Judicial Notice in Support of Petition for Panel Rehearing and Rehearing En Banc filed March 6, 2014 is **DENIED** as moot.