**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JAMUL ACTION COMMITTEE; JAMUL COMMUNITY CHURCH; DARLA KASMEDO; PAUL SCRIPPS; GLEN REVELL; WILLIAM HENDRIX,
*Plaintiffs-Appellants*,

v.

JONODEV CHAUDHURI, Chairwoman of the National Indian Gaming Commission; SALLY JEWELL, Secretary of the U.S. Department of the Interior; KEVIN K. WASHBURN, Esquire, Assistant Secretary - Indian Affairs, U.S. Department of the Interior; AMY DUTSCHKE, Regional Director, Bureau of Indian Affairs; PAULA L. HART, Director of the Office of Inidan Gaming, Bureau of Indian Affairs; JOHN RYDZIK, Chief, Division of Environmental, Cultural Resources Management and Safety of the Bureau of Indian Affairs; DAWN HOULE, Chief of Staff for the National Indian Gaming Commission; U.S. DEPARTMENT OF THE INTERIOR; NATIONAL INDIAN GAMING COMMISSION; RAYMOND HUNTER, Chairman, Jamul Indian

No. 15-16021

D.C. No.
2:13-cv-01920-
KJM-KJN

ORDER AND AMENDED OPINION

Village; CHARLENE CHAMBERLAIN;
ROBERT MESA; RICHARD TELLOW;
JULIA LOTTA; PENN NATIONAL, INC.;
SAN DIEGO GAMING VILLAGE, LLC;
C.W. DRIVER, INC.,
               *Defendants-Appellees*.

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted December 7, 2015
San Francisco, California

Filed June 9, 2016
Amended July 15, 2016

Before: Alex Kozinski, Jay S. Bybee,
and Morgan Christen, Circuit Judges.

Order;
Opinion by Judge Christen

# SUMMARY[*]

### Indian Gaming / Environmental Law

The panel amended the opinion filed on June 9, 2016, and affirmed the district court's denial of a petition for a writ of mandamus under the Administrative Procedure Act of a number of individuals and organizations, alleging that the National Indian Gaming Commission violated the National Environmental Policy Act when it approved the Jamul Indian Village's gaming ordinance for a casino in Jamul, California, without first conducting a NEPA environmental review.

The district court held that the Gaming Commission's approval of the 2013 gaming ordinance was not "major federal action" within the meaning of NEPA requiring the preparation of an environmental impact statement.

Affirming on different grounds than the district court, the panel held that even if the Gaming Commission's approval of the gaming ordinance was a major federal action within the meaning of NEPA, the Gaming Commission was not required to prepare an environmental impact statement because there was an irreconcilable statutory conflict between NEPA and the Indian Gaming Regulatory Act, pursuant to *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 648 (9th Cir. 2014) (holding that an agency need not adhere to NEPA "where doing so 'would create an irreconcilable and fundamental conflict' with the substantive statute at issue").

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kenneth Robert Williams (argued), Sacramento, California, for Plaintiffs-Appellants.

Elizabeth Ann Peterson (argued), William B. Lazarus, Judith Rabinowitz, and Barbara M.R. Marvin, Attorneys; John C. Cruden, Assistant Attorney General, Environment and Natural Resources Division; United States Department of Justice, Washington, D.C.; Rebecca Ross, Office of the Solicitor, United States Department of the Interior, Washington, D.C.; John Hay, Office of the General Counsel, National Indian Gaming Commission, Washington, D.C.; for Federal Defendants-Appellees.

Frank Lawrence (argued), Law Office of Frank Lawrence, Grass Valley, California, for Tribally-Related Defendants-Appellees.

Patrick D. Webb, Webb & Carey, San Diego, California, for Amici Curiae Walter Rosales and Karen Toggery.

---

**ORDER**

The Tribally-related defendants' motion to correct non-substantive errors in the opinion is **GRANTED**. The opinion filed on June 9, 2016, and appearing at 2016 WL 3201335, is amended as follows:

On page 4 of the slip opinion, replace the phrase "a sub-group of tribal members" with the phrase "a number of individuals".

On page 7 of the slip opinion, replace the phrase "on non-tribal lands that it requested from the Secretary of the Interior in the form of a trust-transfer under the Indian Regulatory Act" with the phrase "on land that it requested from the Secretary of the Interior in the form of a trust-transfer under the Indian Reorganization Act".

The parties may file petitions for rehearing or rehearing en banc. The time to file a petition for rehearing or rehearing en banc shall be calculated from the initial filing date of this opinion, June 9, 2016.

---

**OPINION**

CHRISTEN, Circuit Judge:

This case is about an Indian gaming casino in Jamul, California, a rural community close to San Diego, California. The Jamul Indian Village, a federally recognized Indian tribe and a non-party to this suit ("the Tribe"), is building a casino in Jamul. A number of individuals and organizations, including the Jamul Action Committee, the Jamul Community Church, and four residents of rural Jamul (collectively "JAC"), opposes the casino. This lawsuit is JAC's most recent effort to stop its construction. *See, e.g.*, *Rosales v. United States*, 275 F. App'x 1 (D.C. Cir. 2008). JAC contends that the National Indian Gaming Commission ("NIGC") violated the National Environmental Policy Act ("NEPA") when it approved the Tribe's gaming ordinance ("GO") without first conducting a NEPA environmental review. JAC petitioned the district court for a writ of mandamus under the Administrative Procedure Act ("APA"),

arguing that the NEPA environmental review was "agency action unlawfully withheld." 5 U.S.C. § 706(1). The district court denied relief. We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we affirm.[1]

## I.

## A.

This appeal turns on the interplay between two federal statutes: the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, and NEPA, 42 U.S.C. §§ 4321–4370h.

Congress enacted IGRA to regulate gaming on Indian lands. *Big Lagoon Rancheria v. California*, 789 F.3d 947, 949 (9th Cir. 2015) (en banc). IGRA divides gaming activities into "classes" based on the types of games involved. Class III gaming (the kind at issue here) "often involves 'the types of high-stakes games usually associated with Nevada-style gambling,'" *id.* (citation omitted), such as banking card games and slot machines. 25 U.S.C. § 2703(8). IGRA permits class III gaming only if it is "conducted in conformance with a Tribal–State compact entered into by the Indian tribe and the State," *id.* § 2710(d)(1)(C), and approved by the Secretary of the Interior, *id.* § 2710(d)(3)(B).

IGRA requires Indian tribes to receive NIGC's approval of a gaming ordinance before engaging in class III gaming on Indian land. *N. Cty. Cmty. All., Inc. v. Salazar*, 573 F.3d 738,

---

[1] In this opinion we address only JAC's contention that NIGC violated NEPA when it approved the GO. We address JAC's remaining arguments in a memorandum disposition filed contemporaneously with this opinion.

741 (9th Cir. 2009). A gaming ordinance is a resolution adopted by the tribe that describes how the tribe will operate its gambling facilities. 25 U.S.C. § 2710(b)(2)(B). NIGC "shall" approve a gaming ordinance that meets IGRA's requirements "by not later than the date that is 90 days after the date on which [the ordinance] is submitted to the Chairman." *Id.* § 2710(e). If NIGC has not acted on the proposed ordinance by the end of the ninety-day period, the gaming ordinance "shall be considered to have been approved by the Chairman, but only to the extent such ordinance or resolution is consistent with the provisions of" IGRA. *Id.*; *AT & T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 906 n.9 (9th Cir. 2002) (noting that NIGC's tacit approval of a proposed gaming ordinance is final agency action).

NEPA "is our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a). NEPA imposes on federal agencies certain "'action-forcing' procedures that require that agencies take a 'hard look' at environmental consequences" of major federal action. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989); *see also* 42 U.S.C. § 4332. Those procedures are designed to "insure [sic] that environmental information is available to public officials and citizens before decisions are made and before actions are taken," 40 C.F.R. § 1500.1(b), and to "help public officials make decisions that are based on understanding of environmental consequences," *id.* § 1500.1(c). Preeminent among these "action-forcing procedures" is NEPA's requirement that federal agencies contemplating "major Federal action[]" prepare an environmental impact statement ("EIS") analyzing that action. *See* 42 U.S.C. § 4332; 40 C.F.R. § 1502.3. "NEPA directs that, 'to the fullest extent possible . . . public laws of the United States shall be interpreted and administered in accordance with [it].'"

*Westlands Water Dist. v. Nat. Res. Def. Council*, 43 F.3d 457, 460 (9th Cir. 1994) (quoting 42 U.S.C. § 4332 (1988)). Therefore, NEPA applies "unless the existing law applicable to such agency's operations expressly prohibits or makes full compliance with one of the directives impossible." *Jones v. Gordon*, 792 F.2d 821, 826 (9th Cir. 1986) (quoting 115 Cong. Rec. 39703 (1969)).

**B.**

The Jamul Indian Village casino has been in the works for more than fifteen years. The Tribe first enacted a gaming ordinance for class III, casino-style gaming in Jamul in the late 1990s, and NIGC published notice of approval of the ordinance in the Federal Register on January 29, 1999. 64 Fed. Reg. 4,722, 4,723 (Jan. 29, 1999). The next year, the Tribe entered into a compact with the State of California to conduct class III gaming. 65 Fed. Reg. 31,189 (May 16, 2000) (Secretary of the Interior's notice of approval of the compact). The Tribe initially planned to build parts of the casino on land that it requested from the Secretary of the Interior in the form of a trust-transfer under the Indian Reorganization Act, 25 U.S.C. § 461; *see* 67 Fed. Reg. 15,582 (Apr. 2, 2002), but it ultimately redesigned the proposed project to eliminate the need for the trust land, 78 Fed. Reg. 21,398, 21,399 (Apr. 10, 2013). The Tribe sought and obtained NIGC's approval of a revised gaming ordinance for the redesigned project in 2013. Site preparation for the casino began early in 2014, and as of the time we held oral argument, construction was underway.

**C.**

In September 2013, plaintiffs sued NIGC, its chair, and several other federal actors ("Federal Defendants"); tribal officials in their individual capacities ("Tribally-related defendants"); and several private companies alleging, *inter alia*, that defendants failed to comply with NEPA when evaluating the Jamul casino. In January 2015, plaintiffs filed in the district court a motion for a writ of mandamus under 5 U.S.C. § 706(1). That part of the APA enables federal courts to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* In their motion, plaintiffs requested "a writ of mandate to the Federal Defendants directing them to comply with NEPA and finalize and circulate a draft [supplemental environmental impact statement] SEIS while there is still time to avoid the consequences of the Defendants' non-compliance with NEPA." The district court denied relief, holding, in relevant part, that NIGC's approval of the 2013 gaming ordinance was not "major federal action" within the meaning of NEPA. 40 C.F.R. § 1508.18 (defining "major federal action").

**II.**

We review de novo the district court's decision on issues of law, including whether NEPA applies to the agency action at issue here. *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014). We review JAC's petition for a writ of mandamus under the "arbitrary or capricious" standard of review. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 763 (2004) ("An agency's decision not to prepare an EIS can be set aside only upon a showing that it was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'").

## III.

On appeal, JAC argues that NEPA required NIGC to conduct an environmental review before it approved the Tribe's 2013 gaming ordinance, and NIGC's failure to do so means that it "unlawfully withheld . . . agency action." 5 U.S.C. § 706(1); *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). We disagree. Even if, as appellants argue, NIGC's approval of the gaming ordinance was a "major Federal action[]" within the meaning of NEPA, 42 U.S.C. § 4332, NIGC was not required to prepare an EIS because there is an irreconcilable statutory conflict between NEPA and IGRA.

The federal respondents contend (and the district court concluded) that our decision in *North County Community Alliance v. Salazar*, 573 F.3d 738, 740 (9th Cir. 2009), conclusively resolves the NEPA issues presented here. We respectfully disagree. The plaintiffs in *North County* sued NIGC after the Commissioner approved a tribal gaming ordinance without first determining whether the tribe's proposed casino was on "Indian lands," as defined by IGRA. The crux of the plaintiffs' complaint was that the agency violated IGRA because it failed to make an "Indian lands determination." *Id.* The *North County* plaintiffs also argued that NIGC violated NEPA, a challenge we resolved as follows:

> The Alliance claims that NIGC's failure to make an Indian lands determination constituted a "major Federal action[]" under 42 U.S.C. § 4332(C) requiring environmental

review, including preparation of an EIS, under NEPA. We disagree. There has been no major federal action in this case. Therefore, the Appellees had no obligation under NEPA.

*Id.* at 749. *North County* does not settle the NEPA issue presented here because we limited our NEPA analysis in *North County* to the issue presented: Whether "NIGC's failure to make an Indian lands determination constituted a 'major Federal action[]' under 42 U.S.C. § 4332(C) requiring environmental review, including preparation of an EIS, under NEPA." *Id.*; *see also* Appellant's Reply Brief at *15 n.7, *North County*, 573 F.3d at 738 (No. 07-36048), 2007 WL 5445598 (the Indian lands determination would have "provide[d] the 'major federal action' required to trigger NEPA"). *North County* did not address whether NEPA requires NIGC to conduct an environmental review before approving a gaming ordinance. We have not had occasion to address this issue in our prior decisions, but we turn to it now.

Our court has recognized two circumstances where an agency need not complete an EIS even in the presence of major federal action and "despite an absence of express statutory exemption." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 648 (9th Cir. 2014). First, an agency need not adhere to NEPA "where doing so 'would create an irreconcilable and fundamental conflict' with the substantive statute at issue." *Id.* Second, in limited instances, a substantive statute "displaces" NEPA's procedural requirements. *Id.* This case falls into the first category.

The Supreme Court first considered the presence of "an irreconcilable and fundamental conflict" in *Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma*.

426 U.S. 776 (1976). *Flint Ridge* involved a statute requiring developers of subdivisions to prepare a statement about their proposed project before marketing homes to the public. *Id.* at 779–80. Developers were required to file their statement with the U.S. Department of Housing and Urban Development ("HUD"). The statute provided that a developer's statement would "become[] effective automatically on the 30th day after filing, or on such earlier date as the [HUD] Secretary may determine." *Id.* at 781. Defendants proposed construction of a subdivision near the Illinois River in Oklahoma. While the paperwork was pending, plaintiffs petitioned HUD to prepare an EIS to study the impact of the subdivision on the river. HUD rejected plaintiffs' request, and they sought judicial review. The Supreme Court upheld the agency's action, concluding that there was an irreconcilable conflict between the HUD statute's thirty day timeline and NEPA: "It is inconceivable that an environmental impact statement could, in 30 days, be drafted, circulated, commented upon, and then reviewed and revised in light of the comments." *Id.* at 788–89. Thus, "even if the Secretary's action in this case constituted major federal action significantly affecting the quality of the human environment so that an environmental impact statement would ordinarily be required, there would be a clear and fundamental conflict of statutory duty" between the HUD statute and NEPA, such that "NEPA's impact statement requirement is inapplicable." *Id.* at 791. Under *Flint Ridge*, "[a]n irreconcilable conflict is created if a statute mandates a fixed time period for implementation and this time period is too short to allow the agency to comply with NEPA." *Westlands Water Dist.*, 43 F.3d at 460.

Our court has been reticent to find a statutory conflict between NEPA and other provisions of the U.S. Code lest

*Flint Ridge*'s exception undermine Congress's intent that NEPA apply broadly. *See, e.g.*, *Forelaws on Board v. Johnson*, 743 F.2d 677, 683 (9th Cir. 1985) ("NEPA's legislative history reflects Congress's concern that agencies might attempt to avoid any compliance with NEPA by narrowly construing other statutory directives to create a conflict with NEPA."), *as amended*. Thus, we have held that a short time frame for agency action does not create a statutory conflict under *Flint Ridge* when an agency, not Congress, imposes a deadline. *Id.* at 683–85. There is likewise no "irreconcilable conflict" under *Flint Ridge* when the triggering act for a short statutory time table "is within the control of the" agency. *Jones*, 792 F.2d at 826; *see also id.* (declining to find a statutory conflict between NEPA and the Marine Mammal Protection Act's permit approval timeline because "the triggering act for the statutory time table, the publication of notice of a permit application, is within the control" of the agency, and the agency "could withhold publication long enough to comply with any NEPA requirement for preparation of an" EIS). By contrast, an irreconcilable conflict does exist where "Congress did not give the Secretary discretion over when he may carry out his duties," *Westlands Water Dist.*, 43 F.3d at 460, and the statute imposing the time table provides that the proposed action is approved "unless the [agency] acts before the expiration of the statutory period," *Vill. of Barrington, Ill. v. Surface Transp. Bd.*, 636 F.3d 650, 662 (D.C. Cir. 2011) (distinguishing *Flint Ridge* on this ground); *see also Flint Ridge*, 426 U.S. at 781.

Here, like in *Flint Ridge* and *Westlands Water District*, Congress imposed an unyielding statutory deadline for agency action. IGRA requires NIGC to approve a gaming ordinance or resolution "by not later than the date that is 90

days after the date on which any tribal gaming ordinance or resolution is submitted to the Chairman . . . if it meets the requirements of this section." 25 U.S.C. § 2710(e). Courts routinely interpret this provision of IGRA as creating a mandatory deadline for agency action. *See, e.g.*, *Coeur d'Alene Tribe*, 295 F.3d at 906 n.9 (an agency's tacit approval of a gaming ordinance under § 2710(e) is a final agency action for purposes of the APA); *Massachusetts v. AQUINNAH*, No. 13-13286-FDS, 2015 WL 7185436, at *6 n.4 (D. Mass. Nov. 13, 2015) ("A gaming ordinance is automatically approved by NIGC, by operation of law, if it does not act on the ordinance within 90 days."); *cf. Gottlieb v. Peña*, 41 F.3d 730, 731 (D.C. Cir. 1994) (contrasting § 2710(e), a mandatory deadline for agency action, with the "ten-month period for final agency action on applications for correction of Coast Guard records," a discretionary deadline for agency action). The deadline at issue here was imposed by Congress, not NIGC. *See* 25 U.S.C. § 2710(e). And, unlike in *Jones*, the act triggering IGRA's timetable is not within NIGC's control because it is a *tribe's* submission of a proposed gaming ordinance to the agency that triggers the statutory countdown. *Id.*; *cf. Jones*, 792 F.2d at 826. Finally, like in *Flint Ridge*, a gaming ordinance or resolution automatically takes effect after ninety days with or without action by the Commissioner. 25 U.S.C. § 2710(e) ("Any such ordinance or resolution not acted upon at the end of that 90-day period shall be considered to have been approved by the Chairman . . . .").

There is no question that it would be impossible for NIGC to prepare an EIS in the ninety days it has to approve a gaming ordinance. The Supreme Court in *Flint Ridge* recognized that

[d]raft environmental impact statements on simple projects prepared by experienced personnel take some three to five months to complete, at least in the Department of the Interior. . . .   Once a draft statement is prepared, [Council on Environmental Quality] guidelines provide that '[t]o the maximum extent practicable' no action should be taken sooner than 90 days after a draft environmental impact statement (and 30 days after the final statement) has been made available for comment.

*Flint Ridge*, 426 U.S. at 789 n.10.   In keeping with the Supreme Court's analysis, we have previously assumed that it takes an agency at least 360 days to prepare an EIS.  *See Jones*, 792 F.2d at 825.

NEPA's regulations confirm that an agency cannot prepare an EIS in ninety days.  Before publishing its final EIS on a proposed project, an agency must:  (1) publish in the Federal Register a notice of intent to prepare an EIS, 40 C.F.R. §§ 1508.22, 1501.7; (2) gather input on the scope of issues the EIS should address (this is called scoping), *id.* § 1501.7; (3) prepare a draft EIS and publish that document in the Federal Register, *id.* §§ 1502.9, 1506.10(a); (4) provide the public an opportunity to comment on the draft EIS and respond to those comments, *id.* § 1503.4; (5) prepare the final EIS, *id.* § 1502.9; and (6) prepare and issue a record of decision, *id.* § 1505.2.  The regulations make it impossible for an agency to complete these steps within ninety days.  NIGC has previously given the public thirty days to comment on the scope and implementation of a proposed EIS.  *See* 78 Fed. Reg. 21,398 (Apr. 10, 2013).  An agency must provide forty-

five days for public comment on a draft EIS, 40 C.F.R. § 1506.10(c), and it must wait at least thirty days after publishing the final EIS before finalizing the proposed action, *id.* § 1506.10(b)(2). In all cases, "[n]o decision on the proposed action shall be made or recorded . . . until . . . [n]inety (90) days after publication of the" notice of the draft EIS in the Federal Register. *Id.* § 1506.10(b)(1). So, assuming it takes no time to respond to the public's view on scope and implementation, prepare a draft EIS, and incorporate public comments into the final EIS, the shortest time frame in which NIGC could prepare an EIS would be one hundred and twenty days. Plainly, there is an irreconcilable statutory conflict between the mandatory agency deadline in 25 U.S.C. § 2710(e) and NEPA.

This conclusion is consistent with NIGC's informal analysis of its own NEPA obligations. NIGC published a draft NEPA Handbook in 2009 that says: "In some cases, the NIGC's statutory requirements are inconsistent with NEPA. The following NIGC action(s) have been determined to fit into this category: . . . Approval of Tribal gaming ordinances or resolutions as provided in § 2710 of the IGRA, which must be completed within ninety (90) days of submission to the NIGC." 74 Fed. Reg. 63,765, 63,769 (Dec. 4, 2009).

Contrary to JAC's arguments, NIGC's approval of the Tribe's gaming ordinance without conducting a NEPA environmental review did not violate NIGC's obligations under NEPA because "where a clear and unavoidable conflict in statutory authority exists, NEPA must give way." *Flint Ridge*, 426 U.S. at 788. Though the district court relied on other grounds, we affirm its denial of plaintiff's requested writ of mandamus.

## CONCLUSION

The decision of the district court is

**AFFIRMED.**