FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STAND UP FOR CALIFORNIA!; RANDALL BRANNON; MADERA MINISTERIAL ASSOCIATION; SUSAN STJERNE; FIRST ASSEMBLY OF GOD - MADERA; DENNIS SYLVESTER, *Plaintiffs-Appellants*, | No. 18-16830 D.C. No. 2:16-cv-02681-AWI-EPG |
| v. | OPINION |
| U.S. DEPARTMENT OF THE INTERIOR; DAVID BERNHARDT; BUREAU OF INDIAN AFFAIRS; LAWRENCE ROBERTS, *Defendants-Appellees*, | |
| NORTH FORK RANCHERIA OF MONO INDIANS, *Intervenor-Defendant-Appellee.* | |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted February 11, 2020
San Francisco, California

Filed May 27, 2020

Before:  R. Guy Cole, Jr.,[*] Ronald M. Gould, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Gould

## SUMMARY[**]

### Tribal Gaming / Environmental Law

The panel affirmed in part the district court's summary judgment in favor of the Secretary of the Interior and intervenor North Fork Rancheria of Mono Indians as to plaintiffs' Johnson Act claim, and vacated and remanded in part as to environmental claims, in an action challenging the Secretary's issuance, under the Indian Gaming Regulatory Act ("IGRA"), of Secretarial Procedures which authorized the North Fork Rancheria of Mono Indians to operate Class III gaming activities on a parcel of land in Madera, California.

The Johnson Act prohibits the possession or use of any gambling device within Indian country, including slot machines.  IGRA, on the other hand, provides for the operation of gaming by Indian Tribes.  IGRA Class III gaming, at issue here, includes slot machine gaming activities.

---

[*] The Honorable R. Guy Cole, Jr., Chief Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that although IGRA did not expressly exempt Secretarial Procedures from the restrictions of the Johnson Act, the broader context of the statute and the obligation to harmonize multiple statutes when possible, led the panel to conclude that gaming conducted pursuant to Secretarial Procedures was not subject to the Johnson Act. The panel held that the Secretarial Procedures complied with the Administrative Procedure Act, and affirmed the district court's judgment in favor of appellees on the claim.

The panel held that the district court erred in holding that under IGRA, the Secretary in issuing Secretarial Procedures lacked discretion to consider any other federal laws besides IGRA, and was excused from completing an environmental impact statement ("EIS") under the National Environmental Policy Act and a conformity determination under the Clean Air Act.  The panel held that Secretarial Procedures have no such *per se* exemption from these environmental laws. The panel remanded because the district court did not consider the threshold questions of whether the Secretarial Procedures were a major federal action requiring an EIS in the first place, and whether the EIS and conformity determination that were previously prepared in 2010 during the fee-to-trust process satisfied environmental requirements for present purposes.

## COUNSEL

Sean M. Sherlock (argued), Todd E. Lundell, and Jing (Jenny) Hua, Snell & Wilmer L.L.P., Costa Mesa, California, for Plaintiffs-Appellants.

Rachel E. Heron (argued), J. David Gunter II, Joann Kintz, Steven Miskinis, and Rachel Heron, Attorneys; Eric Grant, Deputy Assistant Attorney General; Jeffrey Bossert Clark, Assistant Attorney General; Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Andrew S. Caulum, Attorney, Office of the Solicitor, Washington, D.C.; for Defendants-Appellees U.S. Department of the Interior, David Bernhardt, Bureau of Indian Affairs, and Lawrence Roberts.

Danielle Spinelli (argued), Christopher E. Babbitt, John T. Byrnes, and Claire H. Chung, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C., for Intervenor-Defendant-Appellee North Fork Rancheria of Mono Indians.

## OPINION

GOULD, Circuit Judge:

Plaintiffs-Appellants challenge the Secretary of the Interior's issuance, under the Indian Gaming Regulatory Act (IGRA), of Secretarial Procedures which authorize the North Fork Rancheria of Mono Indians to operate class III gaming activities on a parcel of land in Madera, California. Appellants contend that the Secretarial Procedures violate the Administrative Procedure Act (APA) because they conflict with specific prohibitions of the Johnson Act. Appellants also contend that the Secretary, in issuing the

Secretarial Procedures, violated the National Environmental Policy Act (NEPA) and the Clean Air Act (CAA). The district court granted summary judgment against Appellants on all claims. We affirm in part, as to Appellants' Johnson Act claim, and vacate and remand in part, as to the NEPA and CAA claims.

## I

In 2005, the North Fork Rancheria of Mono Indians (North Fork)—a federally recognized Indian tribe— submitted a fee-to-trust application for the United States Department of the Interior (DOI) to take 305 acres of land in Madera, California (Madera Parcel), into trust to be developed into a hotel and casino. In reviewing the fee-to-trust application, the DOI completed an Environmental Impact Statement (EIS) under NEPA and made a conformity determination under the CAA, which were both upheld as valid in a legal action challenging the fee-to-trust determination. *Stand Up for California! v. Dep't of the Interior*, 204 F. Supp. 3d 212, 323 (D.D.C. 2016), *aff'd*, 879 F.3d 1177, 1192 (D.C. Cir. 2018).[1]

---

[1] In a consolidated action in the District of Columbia district court, Stand Up for California!—one of the Appellants in this case—and another plaintiff challenged the Secretary's fee-to-trust determination on several grounds, including that the EIS and conformity determination did not satisfy NEPA and CAA requirements. The D.C. district court, affirmed by the D.C. Circuit, rejected the plaintiffs' claims, including the NEPA and CAA claims. *Stand Up for California!*, 204 F. Supp. 3d at 323. Another lawsuit claiming that the California governor lacked authority to concur in the Secretary's determination to exempt North Fork from gaming prohibitions is pending before the California Supreme Court. *See Stand Up for California! v. State*, 390 P.3d 781 (Cal. Mar. 22, 2017); *United Auburn Indian Cmty. of the Auburn Rancheria v. Brown*, 387 P.3d 741 (Cal. Jan. 25, 2017). There is also a related appeal

North Fork and the State of California then began negotiating toward a Tribal-State compact to govern gaming activities on the Madera Parcel, pursuant to 25 U.S.C. § 2710(d)(3)(A).  *See North Fork Rancheria of Mono Indians v. California*, No. 1:15-cv-00419, Docket 46, at 2–3 (E.D. Cal. Aug. 10, 2016).   They concluded those negotiations in 2013, and the Secretary of the Interior published notice in October 2013 that the compact would take effect.  *Id.*  Before it could take effect, however, California voters vetoed the Tribal-State compact through a statewide referendum.  *Id.*  Following that referendum, the state refused to negotiate another Tribal-State compact, leading North Fork to file an action to compel the state to negotiate in good faith, pursuant to IGRA, 25 U.S.C. § 2710(d).  *Id.*, Docket 1.

The district court granted North Fork's motion for judgment on the pleadings and ordered California and North Fork to conclude a compact within sixty days, consistent with 25 U.S.C. § 2710(d)(7)(A), (d)(7)(B).  *Id.*, Docket 25. When no agreement was reached, the district court appointed a mediator, who was charged with selecting from among each party's last best offer, "the one which best comports with the terms of [IGRA,] . . . any other applicable Federal law[,] and with the findings and order of the court." 25 U.S.C. § 2710(d)(7)(B)(iv).  The mediator adopted North Fork's proposed compact.  When California did not consent to the proposed compact, the mediator submitted the proposed compact to the Secretary of the Interior to prescribe Secretarial Procedures consistent with the mediator-selected compact, authorizing class III gaming on the     Madera     Parcel,     pursuant     to     25     U.S.C.

---

in *Club One Casino v. Bernhardt*, Case No. 18-16696.  These related cases are not central to the issues here.

§ 2710(d)(7)(B)(vii).  The Secretary issued those Secretarial Procedures on July 29, 2016.

In November 2016, Stand Up for California!, a non-profit corporation and "community watchdog group that focuses on gambling issues affecting California citizens," along with several other plaintiffs (collectively, "Appellants" or "Stand Up"), brought this suit against the DOI in the Eastern District of California, challenging the Secretarial Procedures.  Appellants claimed that the Secretarial Procedures (i) violated the APA because they were inconsistent with the Johnson Act's prohibition of certain gaming devices on Indian lands, (ii) violated NEPA, (iii) violated the CAA, and (iv) violated the Freedom of Information Act (FOIA).  North Fork intervened and became co-defendants with the DOI (collectively, "Appellees").

On cross-motions for summary judgment, the district court granted Appellees' motions for summary judgment and denied Stand Up's motion for summary judgment on all claims.  Appellants timely appealed all but the FOIA claim.  The district court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291.

## II

We review a district court's summary judgment determination *de novo*.  *City & Cty. of San Francisco v. United States*, 130 F.3d 873, 877 (9th Cir. 1997).  We also review a district court's interpretation of statutory meaning *de novo*. *Schleining v. Thomas*, 642 F.3d 1242, 1246 (9th Cir. 2011).  Under the APA, 5 U.S.C. § 706(2)(A), agency action will be upheld unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *San Francisco*, 130 F.3d at 877.

## III

We consider first whether the Secretarial Procedures are inconsistent with the Johnson Act and therefore violate the APA.  We conclude, like the district court, that they do not.

## A

Before beginning our analysis, we briefly explain the relevant statutory background.  The Johnson Act, enacted in 1951, prohibits the possession or use of "any gambling device . . . within Indian country," including slot machines. 15 U.S.C. § 1175(a).  IGRA, on the other hand, enacted in 1988, provides "a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."  *United States v. 103 Electronic Gambling Devices*, 223 F.3d 1091, 1094 (9th Cir. 2000) (quoting 25 U.S.C. § 2702(1)).  Under IGRA, there are three categories of gaming: class I, class II, and class III.  Class III, at issue here, is a catchall for all gaming not included in class I or class II and includes slot machine gaming activities.  25 U.S.C. § 2703(6)–(8).

IGRA provides that class III gaming activities on Indian lands are permissible "only if" the activities are "located in a State that permits such gaming for any purpose by any person, organization, or entity, and . . . [are] conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State under paragraph (3) that is in effect."  25 U.S.C. § 2710(d)(1).  States must enter into good-faith negotiations with any qualified Indian tribe that requests to establish a Tribal-State compact for the purpose of conducting gaming activities.  *Id.* § 2710(d)(3)(A).  If a district court finds that the state has not negotiated in good faith, it must order the state and the Indian tribe to conclude

a Tribal-State compact within sixty days; absent agreement, the court appoints a mediator, who adopts from two proposed compacts—one submitted by the state, the other by the tribe—"the one which best comports with the terms of this chapter and any other applicable Federal law and with the findings and order of the court." *Id.* § 2710(d)(7)(B)(iii)–(iv). If the state consents to the proposed compact selected by the mediator, "the proposed compact shall be treated as a Tribal-State compact entered into under paragraph (3)." *Id.* § 2710(d)(7)(B)(vi). But if the state does not consent, then the "Secretary [of the Interior] shall prescribe, in consultation with the Indian tribe, procedures—(I) which are consistent with the proposed compact selected by the mediator . . . , the provisions of this chapter, and the relevant provisions of the laws of the State, and (II) under which class III gaming may be conducted on the Indian lands over which the Indian tribe has jurisdiction." *Id.* § 2710(d)(7)(B)(vii).

IGRA expressly exempts from the Johnson Act's prohibitions "gaming conducted under a Tribal-State compact that . . . is entered into . . . by a State in which gambling devices are legal, and . . . [that] is in effect." *Id.* § 2710(d)(6) (explaining that the "provisions of section 1175 of title 15 [the Johnson Act] shall not apply" under these circumstances). The statute contains no express exemption for gaming conducted pursuant to Secretarial Procedures, and it does not indicate, as with a mediator-selected compact to which the state consents, that the Procedures "shall be treated as a Tribal-State compact." *Id.* § 2710(d)(7)(B)(vi).

## B

"It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."

*Sturgeon v. Frost*, 136 S. Ct. 1061, 1070 (2016) (quoting *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012)). In general, a statute should "be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). And "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *103 Electronic Gambling Devices*, 223 F.3d at 1102 (citing *Morton v. C.R. Mancari*, 417 U.S. 535, 550–51 (1974) ("When there are two acts upon the same subject, the rule is to give effect to both if possible.")).

Here, although IGRA does not expressly exempt Secretarial Procedures from the restrictions of the Johnson Act, the broader context of the statute and our obligation to harmonize multiple statutes when possible lead us to conclude that gaming conducted pursuant to Secretarial Procedures is not subject to the Johnson Act. A contrary reading leads to a host of inconsistencies, nullities, and internal contradictions within IGRA.

First, an interpretation in which Secretarial Procedures are not viewed as exempt from the Johnson Act would create significant internal conflicts within IGRA. The statute specifies that "Class III gaming activities shall be lawful on Indian lands *only if* such activities are . . . conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State." 25 U.S.C. § 2710(d)(1) (emphasis added). But Secretarial Procedures, by definition, are issued only when no Tribal-State compact has been reached and are the final remedy for a state's refusal to negotiate. *Id.* § 2710(d)(7)(B)(vii). If Secretarial Procedures are not treated as equivalent to Tribal-State

compacts for the purposes of § 2710(d)(1), then Secretarial Procedures can never comply with the *only* situations in which class III gaming is lawful on Indian lands. Secretarial Procedures would always, by definition, violate the very Act that creates those Procedures.

Appellants contend that the authorization of Secretarial Procedures in § 2710(d)(7)(B)(vii) creates an additional situation in which class III gaming may be lawful. But that interpretation reads out of existence Congress's use of the qualifying phrase "only if" in § 2710(d)(1). *See Corley*, 556 U.S. at 314 (statutes should be "construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant"). And an interpretation in which Secretarial Procedures are functionally equivalent to a compact in the context of § 2710(d)(1), but not in the context of the exception to the Johnson Act in § 2710(d)(6), would contravene the "presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994).

Also, under Appellants' proposed reading, Secretarial Procedures would necessarily conflict with another provision of IGRA, 18 U.S.C. § 1166. Section 1166 subjects to criminal liability anyone who conducts gambling activities on Indian lands who would have been subject to criminal liability by the state if the activities had occurred on state rather than Indian lands. *Id.* § 1166(a). The statute expressly excludes from its definition of gambling, and thus from prosecution, "class III gaming conducted under a Tribal-State compact." *Id.* § 1166(c)(2). Again, however, if Secretarial Procedures are not functionally equivalent to Tribal-State compacts in this context, then gambling pursuant to Secretarial Procedures would be subject to

possible criminal liability.[2]  Reading 18 U.S.C. § 1166 and 25 U.S.C. § 2710(d)(1) to forbid gambling pursuant to Secretarial Procedures would render those Procedures a "nullity" and inappropriately deprive § 2710(d)(7)(B)(vii) of its effect.  *Cf. 103 Electronic Gambling Devices*, 223 F.3d at 1102 (to read the Johnson Act as forbidding class II gaming, when IGRA specifically authorizes such gaming, would improperly render IGRA's provision a "nullity").

Second, and relatedly, Appellants' reading robs IGRA's remedial scheme, which relies on Secretarial Procedures to ensure good-faith negotiation by states, of its force.  *See* S. Rep. No. 100-446, at 13 (1988) (noting that the remedial scheme fills the "need to provide some incentive for States to negotiate with tribes in good faith").  As a general matter, IGRA was intended "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."   25 U.S.C. § 2702(1). Secretarial Procedures represent the final step in IGRA's detailed remedial process for when states do not negotiate in good faith with Indian tribes toward that end.   *Id.* § 2710(d)(7)(B).  Although state consent is also a priority, a

---

[2] Appellants contend that § 1166's definition of gambling is really about creating jurisdiction, not liability.  But this reading contradicts the text and structure of the provision.  The statute provides that, "for purposes of Federal law, all State laws pertaining to the licensing, regulation, or prohibition of gambling . . . shall apply in Indian country in the same manner and to the same extent as such laws apply elsewhere in the State," "[s]ubject to subsection (c)."   18 U.S.C. § 1166(a). Subsection (c) provides the definition of gambling, which excludes from that definition Tribal-State compacts but not Secretarial Procedures. *Id.* § 1166(c).  The gambling definition thus clearly and specifically applies to § 1166(a), which creates federal criminal liability, and not to § 1166(d), which deals with jurisdiction.

state's failure to enter good-faith negotiations or, subsequently, to consent to a mediator-selected compact— where the state otherwise makes such gaming lawful on *non*-Indian lands—triggers automatic Secretarial Procedures. *See id.* § 2710(d)(7)(B)(vii) ("the Secretary *shall* prescribe . . . procedures") (emphasis added).

Appellants argue that Indian tribes should be forced to settle for an incomplete remedy—that the Secretary can approve some class III gaming activities, but not those, like slot machines, that are illegal under the Johnson Act. But such an incomplete remedy would create only feeble and ineffective incentives for states to negotiate in good faith. For example, if slot machines are otherwise legal in the state, then they could also be legal under a negotiated Tribal-State compact. Such a compact would serve IGRA's purpose of encouraging tribal economic development by allowing the tribe to operate gambling devices to the same extent those devices can lawfully be operated by non-Indians, on non-Indian land. However, a state that wishes to disadvantage Indian tribes relative to its non-Indian residents could refuse to negotiate in good faith if Secretarial Procedures would never cure a refusal to negotiate the use of devices covered by the Johnson Act, even if they are otherwise legal throughout the state on non-Indian land. States operating in bad faith therefore would have a strong incentive not to negotiate and instead to elect the limited remedy. We do not believe that Congress intended such a result that would permit a state to be hostile to Indian tribes.

Our decision in *103 Electronic Gambling Devices*, 223 F.3d at 1101–03, reinforces our reading of the statute. That case involved similar conflicts between IGRA and the Johnson Act. Specifically, IGRA expressly authorizes class II gaming (including bingo) in Indian country, 25 U.S.C.

§ 2703(7)(A)(i), but does not expressly exempt class II gaming devices (including bingo aids) from the prohibitions of the Johnson Act. *103 Electronic Gambling Devices*, 223 F.3d at 1101. Notwithstanding IGRA's express exemption from the Johnson Act of class III gaming under a Tribal-State compact in 25 U.S.C. § 2710(d)(6), and the lack of such an express exemption for class II bingo aids, we held that IGRA's authorization of class II bingo created an implied exception to the Johnson Act. *Id.* at 1101–02. We reasoned that IGRA authorizes class II bingo and that "[r]eading the Johnson Act to forbid [bingo] aids would render the [statutory authorization] a nullity." *Id.*

We similarly conclude here that IGRA does not at once authorize Secretarial Procedures, while simultaneously making gaming pursuant to those Procedures illegal and robbing the Procedures of their remedial force. As in *103 Electronic Gambling*, "[w]e cannot presume that in enacting IGRA, Congress performed such a 'useless act.'" *Id.* at 1102. Our harmonizing reading, by contrast, gives full force to the Johnson Act's prohibition of gambling devices on Indian lands in all circumstances other than when there is a Tribal-State compact or Secretarial Procedures in effect. *See Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 542 (9th Cir. 1994) (if devices "fall within Class III," they "can be operated by the [tribe] only pursuant to a compact or to procedures prescribed by the Secretary of [the] Interior"). Moreover, it is faithful to our obligation to determine "how two enactments by Congress over thirty-five years apart most comfortably coexist, giving each enacting Congress's legislation the greatest continuing effect." *103 Electronic Gambling*, 223 F.3d at 1101; *see also Morton*, 417 U.S. at 551 ("When there are two acts upon the same subject, the rule is to give effect to both if possible." (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939))).

We conclude that Appellants' reading of the statute is not persuasive.  But even if we found Appellants' reading convincing, the conflicts explained above create, at a minimum, ambiguity in the statute.  *Chevron* deference and the Indian canon of statutory construction would demand that we resolve such ambiguity in favor of Appellees' reasonable construction in this case.

First, under *Chevron*, we owe deference to "an agency's construction of the statute which it administers," so long as that construction is reasonable.  *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–44 (1984).  Here, the Secretary of the Interior has since 1998 construed IGRA to create an exception to the Johnson Act for Secretarial Procedures.  63 Fed. Reg. 3289, 3292 (1998) ("To avoid . . . an absurd result, the statute must be read to mean that all Secretarial-sanctioned gaming is exempt from the provisions of the Johnson Act").  As explained, that reading is reasonable, so we defer to it.

Second, "[a]mbiguity in a statute that is enacted for the benefit of Indians . . . '[is] to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'"  *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 728–29 (9th Cir. 2003) (quoting *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985)).  Congress enacted IGRA for the benefit of Indians. *See Rincon Band of Luiseno Mission Indians v. Schwarzenegger*, 602 F.3d 1019, 1027 (9th Cir. 2010) ("In passing IGRA, Congress assured tribes that the statute would always be construed in their best interests." (citing S. Rep. No. 100-446, at 13–14)); *see also 103 Electronic Gambling Devices*, 223 F.3d at 1094 (IGRA was intended to "promot[e] tribal economic development, self-sufficiency, and strong tribal governments" (quoting 25 U.S.C.

§ 2702(1))).    Accordingly, we construe ambiguity as to whether the North Fork Indians may operate gaming, including slot machines, pursuant to Secretarial Procedures in favor of the tribe.

For those reasons, we hold that Secretarial Procedures are an exception to the prohibitions of the Johnson Act and that they therefore comply with the APA.  We affirm the district court's grant of summary judgment to Appellees on this claim.

## IV

We next consider whether the Secretary, in issuing Secretarial Procedures, was free not to follow procedures required under NEPA and the CAA.  The district court held that, under IGRA, the Secretary lacks discretion to consider any other applicable federal laws besides IGRA, and so the "rule of reason" categorically excuses the Secretary from completing an EIS under NEPA and a conformity determination under the CAA.  We hold that the district court's conclusion was in error and that Secretarial Procedures have no such *per se* exemption from these environmental laws.  However, because the district court did not consider the threshold questions of whether the Secretarial Procedures were a major federal action requiring an EIS in the first place, and whether the EIS and conformity determination that were previously prepared in 2010 during the fee-to-trust process satisfy environmental requirements for present purposes, we vacate and remand.

## A

First, we address the district court's conclusion that the Secretary had no obligation to complete an EIS under NEPA based on the district court's determination that the Secretary

lacks all discretion to comply with any other federal laws besides IGRA.

NEPA was enacted to "provide[] the necessary process to ensure that federal agencies take a hard look at the environmental consequences of their actions." *San Diego Navy Broadway Complex Coal. v. United States Dep't of Def.*, 817 F.3d 653, 659 (9th Cir. 2016) (quoting *Tri-Valley CAREs v. United States Dep't of Energy*, 671 F.3d 1113, 1123 (9th Cir. 2012)). Under NEPA, an agency is required to conduct an EIS for all "major Federal actions significantly affecting the quality of the human environment," 42 U.S.C. § 4332(2)(C), so long as the agency has some control over preventing the environmental effects—the so-called "rule of reason." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 767, 770 (2004) (for the requirement to apply, the agency's action must have a "reasonably close causal relationship" with the environmental effect, and "where an agency has no ability to prevent a certain effect due to its limited statutory authority over the relevant actions, the agency cannot be considered a legally relevant 'cause' of the effect").

The district court determined that the Secretary lacked requisite discretion and control to be required to conduct an EIS. The district court pointed to the language of IGRA, which provides that "the Secretary shall prescribe . . . procedures . . . which are consistent with the proposed compact selected by the mediator . . . , the provisions of [IGRA], and the relevant provisions of the laws of the State." 25 U.S.C. § 2710(d)(7)(B)(vii). Noting the statute's use of mandatory language ("shall"), the district court read the provision "to contain an exhaustive list of authorities to be considered by the Secretary in prescribing Secretarial [P]rocedures"—the mediator-selected compact, IGRA, and state law, but *not* other applicable federal law. The district

court reasoned that because, elsewhere in IGRA, Congress specified that the mediator should consider "other applicable Federal law," *id.* § 2710(d)(7)(B)(iv), the lack of such language with respect to issuance of Secretarial Procedures is significant. We disagree with the district court's overly restrictive reading.

"When confronted with two Acts of Congress allegedly touching on the same topic, [we are] not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (citations and quotation marks omitted). This is especially so in the case of NEPA, which "directs that, 'to the fullest extent possible . . . public laws of the United States shall be interpreted and administered in accordance with [it].'" *Jamul Action Comm. v. Chaudhuri*, 837 F.3d 958, 961 (9th Cir. 2016) (quoting *Westlands Water Dist. v. Nat. Res. Def. Council*, 43 F.3d 457, 460 (9th Cir. 1994)). We have recognized only "two circumstances where an agency need not complete an EIS even in the presence of major federal action and 'despite an absence of express statutory exemption'": (1) "where doing so 'would create an irreconcilable and fundamental conflict' with the substantive statute at issue," and (2) where, "in limited instances, a substantive statute 'displaces' NEPA's procedural requirements." *Id.* at 963 (quoting *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 648 (9th Cir. 2014)). Neither circumstance applies here.

Although the Secretary must prescribe Secretarial Procedures once the state has not timely consented to a mediator-selected compact, that does not mean the Secretary has no discretion whatsoever over the form of those Procedures. We do not read the command that Secretarial Procedures be "consistent with the proposed compact

selected by the mediator . . . , the provisions of [IGRA], and the relevant provisions of the laws of the State," 25 U.S.C. § 2710(d)(7)(B)(vii), to mean that the Secretary must in every case *adopt* the mediator-selected compact wholesale, without modification.   The terms "consistent with" and "adopt" are plainly not synonymous.   And earlier in the statute, Congress specified that the mediator must "select" one of the two proposed compacts offered by the state and the tribe. *Id.* § 2710(d)(7)(B)(iv).  Congress could have used similarly restrictive language, such as "adopt," with respect to Secretarial Procedures, if it so intended.

Moreover, while the statute enumerates some authorities that the Secretary must consider, it does not by its terms *preclude* the Secretary from considering other federal law. The statute can reasonably be read to allow for some discretion on the Secretary's part. *See New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1225 (10th Cir. 2017) ("[O]nce the process has reached the point where the Secretary is statutorily authorized to prescribe procedures, there arguably could be more than one permissible reading of the Secretary's authority—for example, regarding what it means to adopt procedures 'consistent with the proposed compact.'").  Indeed, although other circuits have held that the Secretary's role in prescribing Secretarial Procedures is limited in certain ways, no court has ever held that the Secretary entirely lacks discretion to consider federal law at all in issuing Procedures.   *See id.* (noting that "the Secretary's role is limited" with respect to the *timing* of Secretarial Procedures, without limiting the Secretary as to the *form* of Procedures); *see also Texas v. United States*, 497 F.3d 491, 503 (5th Cir. 2007) (the Secretary has limited authority "to step in only at the end of the [remedial] process" and "may not pull *out of thin air* the compact provisions that he is empowered to enforce" (emphasis

added)).  *Public Citizen*, which held that the "rule of reason" obviated NEPA's requirements, is distinguishable because that case involved a situation in which an agency unambiguously had no discretion to change the decision made by the President.  *See* 541 U.S. at 770 ("Because the President, not FMCSA, could authorize (or not authorize) cross-border operations . . . , and because FMCSA has *no* discretion . . . , its EA did not need to consider the environmental effects arising from the entry." (emphasis added)).

Given that IGRA does not foreclose all consideration of applicable federal laws by the Secretary when issuing Secretarial Procedures, there is no "irreconcilable and fundamental conflict" between IGRA and NEPA.  *Jamul Action*, 837 F.3d at 963.  Similarly, the implicit goal of IGRA to allow expedited authorization of tribal gaming, *see Rincon Band*, 602 F.3d at 1041, is not the same as "an unyielding statutory deadline for agency action" and does not rise to the level of a fundamental, irreconcilable conflict. *Jamul Action*, 837 F.3d at 964 (holding that an irreconcilable conflict with NEPA existed because the "statute mandate[d] a fixed time period for implementation [which was] too short to allow the agency to comply with NEPA"); *see Jewell*, 747 F.3d at 648 (no irreconcilable conflict where "[a]lthough the statute sets out a timetable for the consultation process, it is flexible enough to accommodate the preparation of an EIS"); *Jones v. Gordon*, 792 F.2d 821, 826 (9th Cir. 1986) (holding that NEPA applied because the requirement that an agency act "as soon as practicable" was not in "irreconcilable and fundamental" conflict with the need for the agency to complete an EIS).

IGRA also does not "displace" NEPA because it does not create any comparable process for ensuring environmental

protection.  *Compare Jewell*, 747 F.3d at 649–50 (concluding that Section 7 of the Endangered Species Act does not displace NEPA requirements because their procedures analyze and accomplish different things), *with Douglas County v. Babbitt*, 48 F.3d 1495, 1503 (9th Cir. 1995) (holding that Section 4 of the Endangered Species Act displaces NEPA because it accomplishes all of NEPA's goals and makes NEPA "superfluous").

Our interpretation also comports with common sense.  A construction in which the Secretary retains some discretion to consider and comply with applicable federal laws avoids a situation where the Secretary would potentially be *required* to violate federal law, including perhaps the Constitution, by issuing Secretarial Procedures—a situation which no doubt Congress did not intend.  Appellees contend that such practical problems are unlikely to occur because, before the Secretary acts, the mediator must choose a proposed compact that "best comports with the terms of this chapter and any other applicable Federal law."  25 U.S.C. § 2710(d)(7)(B)(iv).  But the fact remains that the mediator can only "s*elect* from the two proposed compacts the one which *best* comports" with IGRA and other federal law.  *Id.* (emphasis added).  In other words, the plain language confines the mediator even more than the Secretary because the mediator must choose either one or the other proposed compact, as proposed by the state or the tribe, based on whichever is *closer* to complying with relevant law.  If each proposes a compact that is contrary to federal law, then the mediator *must* nevertheless select one without modification; and, under Appellees' and the district court's reading, the Secretary must in turn adopt that unlawful proposed compact.  We will not presume that Congress would enact a statute that requires a federal agency to violate federal law.

*See, e.g.*, *Epic Systems*, 138 S. Ct. at 1624 (courts should strive to give effect to both laws when two are in conflict).

In short, we conclude that IGRA does not categorically bar application of NEPA because the two statutes are not irreconcilable and do not displace each other, and because a contrary result would contravene congressional intent and common sense.  We therefore vacate the district court's order on this issue.  However, because the district court did not consider in the first instance several threshold questions regarding the applicability of NEPA's requirements in this particular case, we remand for the district court to consider: (1) whether the Secretarial Procedures were a "major Federal action" triggering NEPA's requirements in the first place; (2) if so, whether the Secretary could rely on the prior EIS for present purposes[3]; and (3) if the Secretary could not do so, whether to remand to the Secretary to comply with NEPA by supplementing the prior EIS.

**B**

For similar reasons, we vacate and remand the district court's grant of summary judgment against Appellants' claim that the Secretary was required to, but did not, make a

---

[3] "An existing environmental analysis prepared pursuant to NEPA . . . may be used in its entirety if the Responsible Official determines, with appropriate supporting documentation, that it adequately assesses the environmental effects of the proposed action and reasonable alternatives.  The supporting record must include an evaluation of whether new circumstances, new information or changes in the action or its impacts not previously analyzed may result in significantly different environmental effects."  43 C.F.R. § 46.120(c).  "Responsible Officials should make the best use of existing NEPA documents by supplementing, tiering to, incorporating by reference, or adopting previous NEPA environmental analyses to avoid redundancy and unnecessary paperwork."  *Id.* § 46.120(d).

conformity determination under the CAA. Our analysis above shows that the Secretary has some discretion to consider other applicable federal laws in prescribing Secretarial Procedures. And our duty to strive to give effect to multiple statutes rather than finding conflict, *Epic Systems*, 138 S. Ct. at 1624, convinces us that the district court erred by categorically precluding the CAA's requirements in the context of IGRA.

Appellees raise one additional argument, that EPA regulations exempt agency rulemaking and administrative adjudications from CAA requirements. Contrary to Appellees' assertions, the relevant regulation exempts "[r]ulemaking and policy development and issuance," 40 C.F.R. § 93.153(c)(2)(iii), not administrative adjudications. Appellees cite no authority to support their claim that Secretarial Procedures are a type of rulemaking, and indeed Secretarial Procedures are not issued pursuant to rulemaking requirements and procedures under the APA. *See, e.g.*, 5 U.S.C. § 553.

For these reasons, we conclude that the district court erred by holding that Secretarial Procedures are categorically exempt from the CAA's requirement of a conformity determination. We remand, however, for the district court to consider in the first instance whether the conformity determination previously completed during the fee-to-trust process satisfies the CAA's requirements for present purposes.

## V

For the foregoing reasons, we **AFFIRM** in part as to the Johnson Act claim, and **VACATE** and **REMAND** in part as to the environmental claims. Each party shall bear its own costs on appeal.